**Brian E. YOST, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 2, 2011.

Decided March 7, 2012.

Publication Ordered May 25, 2012.

---

Anthony T. Bowser, York, for petitioner.

Janet M. Tarczy, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and FRIEDMAN, Senior Judge.

### ORDER

OPINION BY Judge McGINLEY.

Brian E. Yost (Claimant) challenges the order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's denial of benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]

The facts, as found by the Board, are as follows:

1. The claimant was last employed as a full-time police officer by the Borough of Hanover from May 16, 1994, at a final rate of $32.33 per hour. His last day of work was November 4, 2010.

2. On May 27, 2008, the employer started allowing its officers to carry and use Taser weapons.

. . . .

4. On November 1, 2010, in the presence of three other officers, the claimant was attempting to arrest a suspect who was yelling, cursing, and not following the claimant's directions.

5. The claimant pulled out his Taser and aimed it at the suspect and told him to get on the ground. After the suspect finally complied and the claimant approached him to put on the handcuffs, the claimant holstered the Taser.

6. The claimant and another officer attempted to get the handcuffed suspect to the patrol car, but the suspect resisted. He continued to yell and curse and refused to move, pushing back on the claimant as they were walking.

7. The claimant took out his Taser and placed it against the suspect's back and told him to get moving.

8. Although it was not taught by the employer, other officers had used the Taser in this manner.

9. The Taser accidentally deployed.

10. Because the cartridge was on but the Taser was against the suspect's back, the Taser malfunctioned and did not affect the suspect.

11. The suspect became more enraged, and another officer took the suspect to the ground.

12. The claimant intentionally put the Taser to the suspect's back and shot him again in an effort to calm him down.

13. The claimant and the other officer pulled the suspect to his feet and the suspect continued to aggressively resist.

14. The claimant searched the suspect for weapons, then attempted to place him in the back of the patrol car. The suspect resisted being put in the car and

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

continued yelling and cursing at the officers.

15. The other officer again pushed the suspect to the ground.

16. The claimant punched the suspect in the chest three times with his flashlight in his hand.

17. They eventually got the suspect into the patrol car.

18. The claimant reported the incident.

19. Following an investigation, the employer terminated the claimant's employment for use of excessive force.

Board Opinion, June 16, 2011, (Opinion), Findings of Fact Nos. 1–2, and 4–19 at 1–2.

The Board determined:

The claimant did not deny the allegations made by the employer. The claimant admitted to accidentally deploying the Taser the first time, and intentionally deploying it the second time. The claimant also admitted to striking the handcuffed suspect with his hand holding a flashlight while the suspect was on the ground. The Board finds that the first deployment of the Taser was accidental and not willful misconduct. The Board also finds that the intentional use of the Taser was not excessive given the situation. *However, the physical striking of the suspect after he was handcuffed and on the ground, and in the presence of three other officers, does rise to the level of willful misconduct.* The claimant has not offered or proven any good cause for these actions. Therefore, the Board concludes that the claimant was terminated from employment due to willful misconduct. (Emphasis added).

Opinion at 3.

■ Claimant contends that the Board erred when it found he committed willful misconduct because his constitutional due process rights were violated, that the determination that he committed willful misconduct was unsupported by substantial evidence, and that even if he did commit willful misconduct the Board failed to consider mitigating factors.[2]

■ Initially, Claimant contends that the Board erred when it found him ineligible for unemployment compensation because his constitutional due process protections were violated. Prior to this termination Hanover Borough (Employer) failed to provide him with written notice of the charges to be addressed at his *Loudermill*[3] hearing. Claimant argues that the record fails to establish that he received written notice of the charges against him prior to his meeting with Randy Whitson, Chief of the Borough of Hanover Police Department, (Chief Whitson). This meeting was later termed a *"Loudermill"* hearing. Claimant asserts that his attempts to introduce testimony to prove he did not

2. This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review,* 161 Pa. Cmwlth. 464, 637 A.2d 695 (1994).

3. *Loudermill* hearings are so called because of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), where the United States Supreme Court held that a public employee who had a property interest in his or her position is entitled to a pre-termination opportunity pursuant to the requirements of the Due Process Clause of the United States Constitution. The United States Supreme Court stated that the hearing "need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill,* 470 U.S. at 545–546, 105 S.Ct. 1487.

receive sufficient due process were thwarted. He further argues that where an employee's due process rights are violated the termination is procedurally invalid and may not be grounds for denying the employee unemployment compensation benefits.

Whether Employer provided Claimant with an adequate *Loudermill* hearing was not for the Board to decide. The General Assembly established the unemployment compensation system "for the benefit of persons unemployed through no fault of their own." Section 3 of the Law, 43 P.S. § 752. In following that mandate the unemployment compensation system is designed to provide benefits to workers who become unemployed through no fault of their own. The General Assembly did not include in the Law any provisions for the Board to review whether a government worker was afforded procedural due process before he was fired. While Claimant may have a valid claim that he did not receive a proper *Loudermill* hearing, he cites no case law, statute, or regulation to support his assertion that a proper or improper *Loudermill* hearing has any bearing on his receipt of unemployment compensation benefits. Claimant's assertion is without merit.

█ Claimant next contends that the Board's decision was unsupported by substantial evidence because the determination that he committed willful misconduct was based on hearsay testimony from Chief Whitson who did not have first hand knowledge of the events.

█ Whether a Claimant's conduct rises to the level of willful misconduct is a question of law subject to this Court's review. *Lee Hospital v. Unemployment Compensation Board of Review*, 139 Pa. Cmwlth. 28, 589 A.2d 297 (1991). Willful misconduct is defined as conduct that represents a wanton and willful disregard of an Employer's interest, deliberate violation of rules, disregard of standards of behavior which an Employer can rightfully expect from the employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the Employer's interest or employee's duties and obligations. *Frick v. Unemployment Compensation Board of Review*, 31 Pa.Cmwlth. 198, 375 A.2d 879 (1977). The Employer bears the burden of proving that it discharged an employee for willful misconduct. *City of Beaver Falls v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 14, 441 A.2d 510 (1982). The Employer bears the burden of proving the existence of the work rule and its violation. Once the Employer establishes that, the burden then shifts to the Claimant to prove that the violation was for good cause. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

Here, Chief Whitson testified that Employer had a Use of Force policy which was implemented in April 22, 2008, and that Claimant was trained in the Use of Force Policy in 2008 and 2009. Notes of Testimony, February 2, 2011, (N.T.) at 7–8. The Use of Force Policy was submitted into evidence.[4] Claimant does not challenge that such a policy existed or that he was aware of it. Claimant argues that the Board's decision that he committed willful misconduct was unsupported by substantial evidence.

Chief Whitson was not present when the altercation took place. However, Chief

4. The Use of Force Policy contains a Use of Force Progression from lower level intrusion such as "officer presence" use to the use of deadly force if necessary to protect the officer or another person from death or serious bodily injury, or to apprehend a fleeing felon who is a danger to the community if not immediately apprehended.

Whitson viewed a videotape (video) which was taped from a recorder in the police car at the scene. Chief Whitson described what he saw on the video:

We have a video. Our cars have in camera videos and you can see Brian [Claimant] and the individual and Officer[s] Mease, Miles and Brubaker are standing at the front fender of our cruiser at the wheel well and Brian [Claimant] is patting him down taking things out of his [pockets?] putting them on the hood of the cruiser and then Brian [Claimant] and Mease and Miles move the guy around to an open door to the back of the car ... to put him inside the car ...

....

We did not have—no one had a clip microphone on so we don't—I don't know what the audio was. I don't know what he was saying, but you can see that he was, he was facing towards Brian [Claimant]. You could see that they were trying to push him into the car and he sort of more or less leans toward Brian and Officer Miles grabs—you can see the grab and the guy goes to the ground. You can see his feet by the car at the bottom of the car. He's not kicking or anything like that. He is on his back so his hands would have been behind him in handcuffs. Miles is up near his head and you can't see anything in the video on that. Brian [Claimant] gets on top of him and you can see Brian strike him several times. His elbow goes up in the air and his fist comes down in the chest area.

N.T. at 22. Chief Whitson testified that he saw Claimant strike the suspect ... "[a]t least three [times] by the rise and fall of his fist in the video." N.T. at 22.

Claimant argues that Chief Whitson's testimony was hearsay because he had no personal knowledge of the incident and because the video was not introduced into evidence.

Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). A "statement" is defined in the Pennsylvania Rules of Evidence as "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." Pa.R.E. 801(a).

While Chief Whitson was not present when the incident took place, he related his observations of the video. *Hammock v. The State*, 311 Ga.App. 344, 715 S.E.2d 709 (2011), a case from the Court of Appeals of Georgia, is instructive. In *Hammock*, Michael Hammock (Hammock) was convicted of theft of an automobile. He appealed and challenged the sufficiency of the evidence. On April 22, 2008, Hammock cashed a check in a convenience store and lingered in the store for several hours. A woman, Amy Ellison (Ellison), arrived at the store, put gas in her car and went inside to buy beer. Ellison left her keys in the car. Hammock cut in front of Ellison at the checkout counter, bought a candy bar, and went outside. Moments later, Ellison left the store and discovered her car was gone. Ellison and the store owner called the police. The police officer, Ellison, and the store owner watched the store's surveillance videotape, which showed a man exit the store, get into Ellison's car, and drive away. All three testified that the man was Hammock. The videotape was not produced at trial because the tape had been reused and taped over. *Hammock*, 311 Ga.App. at 344, 715 S.E.2d at 710.

Hammock argued that the evidence was insufficient because the surveillance videotape was hearsay. The Court of Appeals of Georgia held that the neither the video-

tape nor the testimony about what was observed on the videotape was hearsay:

> Here, the witnesses did not offer any testimony about what someone else said or wrote outside of court. Rather, they testified about their personal observations of the conduct that appeared on the videotape.... Because this testimony did not ask the jury to assume the truth of out-of-court statements made by others, and instead 'the value of [the] testimony rested on [the witnesses'] own veracity and competence, the testimony was not hearsay.'... Indeed, 'the jury was free to disregard testimony that the individual depicted in the surveillance video was [Hammock].' (Citations omitted).

*Hammock*, 311 Ga.App. at 345, 715 S.E.2d at 711.

■ Hammock also contended that his counsel was ineffective because counsel failed to raise a hearsay objection to the testimony concerning the surveillance videotape. The Court of Appeals of Georgia disagreed and ruled that a hearsay objection "would have been unavailing because the surveillance footage and the testimony about what the witnesses personally observed on it was not hearsay." *Hammock*, 311 Ga.App. at 346, 715 S.E.2d at 711.[5]

■ Here, Chief Whitson testified as to what he observed on the video. The video itself was not introduced into evidence.[6] Claimant had the opportunity to cross-examine Chief Whitson concerning his observations. Employer did not introduce Chief Whitson's testimony in order for the Board to assume the truth of any out of court statements made by others. Rather, the Board was required to make a credibility determination concerning Chief Whit-

son's testimony. The Board found Chief Whitson credible. In unemployment compensation proceedings, the Board is the ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded evidence. *Unemployment Compensation Board of Review v. Wright*, 21 Pa.Cmwlth. 637, 347 A.2d 328 (1975). Findings of fact are conclusive upon review provided that the record, taken as a whole, provides substantial evidence to support the findings. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

First, Claimant did not object to Chief Whitson's testimony. Second, assuming arguendo that Chief Whitson's statements were hearsay, an unobjected to hearsay statement will be given its probative effect and may support a finding of fact if corroborated by any competent evidence in the record. *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Cmwlth. 522, 367 A.2d 366 (1976). In his Incident Investigation Report, Claimant admitted that after he pulled the handcuffed suspect to the ground, "he [the suspect] continued kicking toward me, and I subdued him by striking him in the chest." Incident Investigation Report, November 2, 2010, at 3. Also, in Chief Whitson's summary of his conversation with Claimant which Claimant admitted was accurate, Chief Whitson reported:

> You were asked about the use of force at the patrol vehicle when you were attempting to place the suspect in the vehicle. You said that your report and later statement said that you struck the victim once in the chest with your fist having your flashlight in your hand at

---

5. Though a case from the state of Georgia is not binding precedent on this Court, this Court finds the reasoning persuasive.

6. The video itself is not hearsay because it is non-assertive conduct. *See* Pa.R.E. 801(a); *See also, Commonwealth v. Lewis*, 424 Pa.Super. 531, 623 A.2d 355 (1993).

---

Page 1165