IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mbainai Narmbaye,      :
     Petitioner   :
          :  No. 1003 C.D. 2015
    v.      :
          :  Submitted:  November 25, 2015
Unemployment Compensation  :
Board of Review,     :
     Respondent  :


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge[1]
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH        FILED:  March 9, 2016


    Mbainai Narmbaye (Claimant) petitions, *pro se,* for review of the April 22, 2015 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision that Claimant was ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[2]  For the following reasons, we affirm.

---

   [1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

   [2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) of the Law provides that an employee shall be ineligible for benefits for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

## Facts and Procedural History

The Juvenile Justice Center (Employer) employed Claimant as a counselor from December 17, 2012, through his last day of employment on December 13, 2014. (Notes of Testimony (N.T.) at 7-8.)

On or about December 15, 2014, Employer became aware of an incident involving Claimant's physical restraint of a juvenile client under Employer's supervision. (Finding of Fact No. 4.) After investigation, Employer determined that Claimant's restraint was inappropriate and excessive under the circumstances, and discharged him for violating its policy pertaining to client restraints. (Finding of Fact No. 6.) Claimant applied for benefits with the local service center, which determined that Claimant's actions constituted willful misconduct, rendering him ineligible for unemployment compensation benefits. Claimant appealed the determination to a referee, who held a hearing on February 12, 2015.

Bridget Taylor (Taylor) testified that she was a program director for Employer and was responsible for the program in which Claimant worked. Taylor stated that on December 14, 2014, Wakina Howard (Howard), acting supervisor the day of the incident, informed her that Claimant had used improper physical restraint/force on a client. Taylor explained that Howard advised her that the Pennsylvania Department of Public Welfare (DPW) visited Employer's facility to perform an investigation of the incident, and that DPW indicated that Employer was probably going to be cited for excessive force/improper restraint. (N.T. at 11-12, 16-19.)

Taylor testified that she reviewed surveillance video of the incident, which occurred while the client was sitting on the second floor steps. According to Taylor, the video showed Claimant walking over to the client, pushing him down and backwards onto the steps, and placing a knee into his chest. Taylor stated that

2

another staff member then climbed the steps and escorted the client downstairs. (N.T. at 12-14.)

Taylor testified that Employer trains all employees/counselors, including Claimant, how to physically restrain clients. Taylor stated that physical restraint would be appropriate where a client is threatening himself, threatening others, or destroying property, but observed none of those circumstances on the video. While there was no audio to the recording, Taylor noted that no reasonable use of physical restraint would permit an employee to push a client to the floor and place a knee to his chest. Based on her observation of the video, Taylor stated that she could discern no reason for Claimant to physically restrain the client and concluded that Claimant's actions constituted excessive force. (N.T. at 13-14.)

Taylor explained that there is a difference between excessive force and child abuse in that one can use excessive force and not abuse a child. Taylor testified that on December 15, 2014, she and Richard Chapman (Chapman), Employer's Executive Director, communicated with Claimant by phone to confirm the incident and to inform Claimant that DPW had initiated an investigation. (N.T. at 15.)

Theresa Bennett (Bennett), Employer's acting Director of Human Resources at the time of the incident, testified that, on December 15, 2014, a supervisor informed her of a video showing that Claimant used the wrong type of physical restraint on a client to calm him down.[3] In a January 9, 2015 oral interview/statement that she provided to the service center, Bennett stated, in pertinent part:

> The [Claimant] was terminated for excessive force while disciplining a client . . . while working in the group home . . . with kids that are confined by the state[.] A client filed a

---

[3] Bennett did not review the video or see the incident in person.

3

complaint of physical abuse against the [Claimant] and requested he be taken to the hospital due to pain in his chest. A review of the security video clearly showed the [Claimant] kneeing the client in the chest and restraining him. This is the third time the state has investigated the [Claimant] and this time [Employer] had all the proof to terminate him.

The [Claimant] did not deny the allegation after seeing the video.

(N.T. at 10; Record at Exhibit SC-8.) When Claimant questioned Bennett about her statement that "Claimant did not deny the allegation after seeing the video," Bennett testified that Taylor had informed her of the same. Bennett acknowledged that she had no first-hand knowledge as to when Claimant was given an opportunity to review the video and whether he denied the allegations. (N.T. at 8, 10-11.)

Bennett testified that she was involved in the decision to terminate Claimant for using excessive force in restraining a client and she confirmed Employer's policy regarding client restraints and abuse of a client, which is contained in section F.3(I), item 1 of Employer's Policy and Procedure Manual. Bennett explained that the policy pertains to "any issue that threatens the health and safety of [Employer's] children, destructs, interferes, or prevents [Employer's] operation and function, or seriously threatens [Employer's] adherence to State and City Regulations." (N.T. at 9.) Bennett testified that Claimant was aware of the policy because every employee receives a manual at the time of hire, and noted that Claimant signed acknowledgements of his receipt of the manual on two occasions prior to the incident. Bennett indicated that Claimant violated the policy due to his use of excessive force in restraining a client, which is a terminable offense. (N.T. at 8-10; Record at Exhibit SC-12.)

4

Chapman testified that he became aware of the incident through Taylor. He and Taylor discussed the DPW's belief that Claimant's actions may have constituted illegal restraint, and determined that Claimant could not return to employment because this was his third incident concerning inappropriate disciplinary actions. (N.T. at 18.)

Chapman acknowledged that he did not view the video, but spoke with Claimant about the incident over the phone. According to Chapman, Claimant conceded that an incident occurred, but claimed that it was not as severe as Employer described. Chapman testified that Claimant said he was out of town at the time of the phone call and could not return to work. Chapman stated that, in the same conversation, Claimant told him that "he wanted to come back to work for a week, but he was looking for another job, so he only wanted to be employed for about another five days or so." (N.T. at 18.) Chapman told Claimant that he could not return to employment due to the fact that DPW informed Employer that his actions constituted an illegal restraint. (N.T. at 17-18.)

Chapman testified that Claimant violated Employer's policy contained in the manual. Chapman further testified that the manual contains policies and procedures that all employees must follow, and each employee provides written acknowledgment of receipt of the manual. (N.T. at 20-21.)

Chapman noted that DPW can cite Employer for violating DPW regulations[4] and/or that the conduct may constitute inappropriate discipline in violation of Employer's polices, without that conduct rising to the level of child abuse. Chapman testified that although DPW may conclude that no child abuse occurred, Employer could still consider that conduct as evidencing a disregard of the

---

[4] Employer never received a written citation from DPW for this incident. (N.T. at 19.)

5

standards of behavior it expects from its employee. Chapman testified that Claimant was terminated based on his use of illegal restraint and excessive force, and not due to the child abuse investigation. (N.T. at 19-20.)

Claimant denied that the incident occurred as described by Employer's witnesses, and testified that he never placed his knee on the client's chest. According to Claimant, the client exhibited bad behavior throughout the day, not just at the time of the incident. Immediately prior to the incident, Claimant instructed the client to sit on the steps outside of the bedroom because the client was preventing others from sleeping. Claimant explained that he walked over to the client and leaned over him to find out what was wrong and calm him down. Claimant testified that the client began to curse at him and spat in his face. Claimant stated that he responded by restraining the client by his forearms, and continued the restraint as the client attempted to punch him. Claimant indicated that a co-worker then appeared and escorted the client to another floor of the facility. According to Claimant, surveillance video of the incident would corroborate his testimony. (N.T. at 22-25.)

Claimant stated that Taylor and Chapman informed him that he violated the restraint rule and he was being terminated because Employer needed to protect its license. Claimant agreed that pushing a client to the floor and kneeing the client would constitute either an illegal restraint or excessive force. However, Claimant described his restraint of the client as acceptable, in accordance with how he was trained, and not in violation of Employer's policy. (N.T. at 7-8, 24-25, 28.)

Claimant submitted a letter from DPW finding that the child abuse allegation was unfounded. Claimant contended that DPW's finding mandates a determination that he did not violate Employer's policy regarding excessive force/improper restraints. Claimant argued that because DPW's investigation

6

resulted in a finding of unfounded child abuse, the incident must have occurred as he described. (N.T. at 27-28.)

By decision and order dated February 19, 2015, the referee affirmed the local service center's determination and found Claimant ineligible for benefits. The referee found that Employer had a policy regarding restraints and abuse of clients; Claimant was or should have been aware of Employer's prohibition against client abuse; Taylor reviewed video of the incident which showed Claimant placing his knee on the client's chest; and Claimant was discharged for violating the policy when he used excessive force. (Findings of Fact Nos. 2-6.) Further, the referee found that Claimant had previously been warned about improper use of force against a client. (Finding of Fact No. 7.)

The referee noted that the parties presented conflicting testimony and resolved all such conflicts in Employer's favor. The referee credited Taylor's testimony regarding her observations of Claimant's conduct on the video, and noted Bennett's witness statement that Claimant "had been investigated three times and this time [the Employer] had all the proof to terminate [Claimant]." (Decision at 2.) The referee concluded that Claimant's violation of Employer's policy constituted willful misconduct and that Claimant failed to demonstrate that he had good cause for his actions. Claimant appealed the referee's decision to the Board, requesting a remand hearing to offer additional evidence. By decision dated April 22, 2015, the Board affirmed the referee's decision, adopted and incorporated the referee's findings and legal conclusions, and denied Claimant's request for a remand.

**Discussion**

On appeal to this Court,[5] Claimant argues that the Board erred in affirming the referee's decision because Taylor's testimony describing what she observed on the surveillance video was hearsay. Claimant also contends that the Board erred because he presented credible testimony denying the allegations of willful misconduct and the investigative findings of DPW prove the incident did not occur as Employer's witnesses described.

Section 402(e) of the Law provides that an employee shall be ineligible for benefits for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work. 43 P.S. §802(e). While willful misconduct is not defined in the Law, our courts have defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grand Sport Auto Body v. Unemployment Compensation Board of Review,* 55 A.3d 186, 190 (Pa. Cmwlth. 2012).

Whether Claimant's conduct constitutes willful misconduct is a question of law subject to this Court's review. *Ductmate Industries, Inc. v. Unemployment*

---

[5] Our scope of review in an unemployment compensation appeal is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. *Leace v. Unemployment Compensation Board of Review*, 92 A.3d 1272, 1274 n.2 (Pa. Cmwlth. 2014). Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion. *Umedman v. Unemployment Compensation Board of Review,* 52 A.3d 558, 564 (Pa. Cmwlth. 2012). Where substantial evidence supports the Board's findings, they are conclusive on appeal. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

*Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Employer, as the prevailing party below, is entitled to the benefit of all reasonable inferences drawn from the evidence. *Id.* However, it must be noted that the Board is the ultimate fact-finder in unemployment compensation proceedings. *Chapman v. Unemployment Compensation Board of Review,* 20 A.3d 603, 607 (Pa. Cmwlth. 2011). Issues of credibility are solely for the Board, which may either accept or reject a witness's testimony, regardless of whether it is corroborated by other record evidence. *Id.*

Where, as here, the determination of willful misconduct is based on the violation of a work rule, employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. *Yost v. Unemployment Compensation Board of Review*, 42 A.3d 1158, 1162 (Pa. Cmwlth. 2012). If employer meets its burden, the burden shifts to claimant to show good cause for his conduct. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010).

Generally, a conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in cases where the employee has been warned and/or reprimanded for prior similar conduct. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013) (quoting *Department of Transportation v. Unemployment Compensation Board of Review*, 479 A.2d 57, 58 (Pa. Cmwlth. 1984)). However, we have previously held that "the existence of a specific rule is not necessary where the employer has a right to expect a certain standard of behavior, that standard is obvious to the employee, and the employee's conduct is so inimical to the employer's interests that discharge is a natural result." *Id.* at 1162.

**Hearsay**

Claimant first argues that the Board erred in affirming the referee's determination because the testimony of Taylor upon which the referee relied constituted hearsay. We disagree.

The Pennsylvania Rules of Evidence define hearsay as a statement made by a declarant that is offered to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). A statement is defined by the Pennsylvania Rules of Evidence as "a person's oral assertion, written assertion, or nonverbal conduct, *if the person intended it as an assertion*." Pa.R.E. 801(a) (emphasis added). Hearsay evidence, properly objected to, is not competent evidence to support a finding of the Board. *Walker v. Unemployment Compensation Board of Review,* 367 A.2d 366, 370 (Pa. Cmwlth. 1976). Hearsay evidence admitted without objection, however, will be given its natural probative effect and may support a finding of the Board if corroborated by any competent evidence in the record. *Id.*

In the present case, Claimant failed to make an objection to this testimony at the time of the hearing, and, therefore, any hearsay objection is waived.[6] *Phoebus v. Unemployment Compensation Board of Review,* 573 A.2d 649, 651 (Pa. Cmwlth. 1990) (a claimant's failure to raise an objection before the referee constitutes waiver of the issue on appeal).

However, assuming *arguendo* that Claimant had timely objected to Taylor's testimony, we conclude that it was not hearsay. This Court previously

---

[6] The Claimant asserts that he made a "de facto" objection by presenting testimony and evidence contrary to that submitted by Employer's witnesses. (Petitioner's Amended Br. at 12). The Claimant's submission of conflicting evidence, standing alone, is insufficient to preserve and make a hearsay objection to his opponent's evidence.

rejected an identical argument in *Yost v. Unemployment Compensation Board of Review*, 42 A.3d 1158, 1162-64 (Pa. Cmwlth. 2012). In *Yost,* police car video recorded the claimant striking a suspect in the chest three times with his flashlight when the suspect was already handcuffed and on the ground. The police chief was not present when the incident occurred, but had reviewed the videotape and testified to his observations of the video. The claimant objected that the police chief's testimony was hearsay because he had no personal knowledge of the incident and because the video was not introduced into evidence. We held that neither the police chief's testimony about what he observed on the tape nor the video itself was hearsay. Rather than testifying as to any statements made by the suspect, the police chief testified only as to his observations of the conduct that appeared on the video. This Court concluded that the police chief's testimony pertained to non-assertive conduct, which does not constitute hearsay. Accordingly, we concluded that the Board was required to make a credibility determination as to the testimony, and it found the police chief's testimony credible. *See also Davis v. Civil Service Commission of the City of Philadelphia,* 820 A.2d 874, 879 n.3 (Pa. Cmwlth. 2003) (videotape was not hearsay because nonverbal conduct is hearsay only if intended as an assertion).[7]

---

[7] Our Superior Court reached a similar result in *Commonwealth v. Lewis*, 623 A.2d 355 (Pa. Super. 1993). In *Lewis*, the defendant appealed a conviction for retail theft. The defendant's actions had been recorded on surveillance video, which was subsequently reviewed by local police. At trial, an officer testified regarding what he observed on the tape, even though he had not observed the defendant's actions contemporaneously with the crime.

On appeal, the defendant contended that the officer's testimony concerning his actions on the tape was hearsay and should not have been admitted. The Superior Court held that such testimony was not hearsay and noted that the alleged "statement" was the conduct of defendant as recorded on the video. The Superior Court found that defendant's actions did not fall within the category of assertive conduct, which it described as conduct intended to convey a message. Accordingly, the *Lewis* court held that the officer's testimony was not hearsay.

11

Consistent with *Yost*, even if Claimant had timely objected to Taylor's testimony regarding what she saw on the videotape, this testimony would not constitute hearsay.[8]

**Claimant's Testimony and DPW Investigation**

Next, the Claimant argues that the Board erred because he presented credible testimony denying the allegations of willful misconduct, and DPW investigative findings prove that the incident did not occur as Employer's witnesses described. We disagree.

The present case included conflicting testimony from Claimant and Employer's witnesses regarding the specific details of Claimant's interaction with the client. The Board credited Employer's witnesses' testimony over that of Claimant. The law is well-settled that issues of credibility are solely for the Board to resolve. *Chapman*, 20 A.3d at 607, 610.

Because the findings are supported by substantial evidence, the fact that Claimant may have adduced evidence to the contrary is immaterial and not a basis for reversal. *Ellis*, 59 A.3d at 1164 n.4 ("The fact that a claimant may have given a different version of events, or . . . might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings.").

Additionally, we note that the results of DPW's investigation are irrelevant to the outcome of this case. The fact that DPW found the child abuse

---

[8] We note that Employer was not required to submit the video in evidence. The best evidence rule, a technical rule of evidence, does not apply to unemployment compensation proceedings. 2 Pa. C.S. §505; *DiLucente Corporation v. Prevailing Wage Appeals Board*, 692 A.2d 295, 298 (Pa. Cmwlth. 1997).

allegations unfounded is irrelevant to a determination of whether Claimant committed willful misconduct under Section 402(e) of the Law. We have previously held that a finding of child abuse is not required for a determination of willful misconduct under the Law.[9] *Woods Services v. Unemployment Compensation Board of Review*, 885 A.2d 630, 634 (Pa. Cmwlth. 2005); *see also Watkins v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 687 C.D. 2013, filed September 5, 2013), slip op. at 7 n.5 ("a finding by ChildLine is not required for a determination of willful misconduct under the Law").[10]

## Conclusion

Because Employer presented competent evidence that Claimant violated its policy by using excessive force/restraint on a client, and Claimant failed to establish just cause for his actions, the Board did not err in affirming the referee's decision that Claimant committed willful misconduct, thereby rendering him ineligible for benefits under section 402(e) of the Law.

_____
PATRICIA A. McCULLOUGH, Judge

---

[9] Furthermore, we note that Employer was not required to await the outcome of DPW's investigation of child abuse to make a determination that Claimant's conduct violated its policy prohibiting the use of excessive force.

[10] An unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent. *See* Pa.R.A.P. 3716(b); Commonwealth Court Internal Operating Procedures, §414.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mbainai Narmbaye,           :
             Petitioner      :
                                 :  No. 1003 C.D. 2015
            v.              :
                                 :
Unemployment Compensation   :
Board of Review,            :
             Respondent     :

## ***ORDER***

AND NOW, this 9th day of March, 2016, the April 22, 2015 order of the Unemployment Compensation Board of Review is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge