IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin Fishbein, : 
               Petitioner : 
          :   No. 536 C.D. 2017
         v. : 
          :   Submitted: August 25, 2017
Unemployment Compensation : 
Board of Review, : 
               Respondent : 

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: October 27, 2017

Justin Fishbein (Claimant) petitions, *pro se*, for review of the March 15, 2017 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision and denied him benefits under section 402(e) of Pennsylvania's Unemployment Compensation Law (Law).[1]

**Facts and Procedural History**

Claimant was employed by the Pennsylvania Turnpike Commission (Employer) as a full-time Clerk 3 Audit from August 15, 2012, through August 18,

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. §802(e).

2016. (Referee's Finding of Fact (F.F.) No. 1; Notes of Transcript (N.T.) at 9.) Claimant is a member of Teamsters Local 77 Central Office Bargaining Unit (Union). (Claimant's brief at 2.) As a member of the Union, Claimant's employment with Employer was governed by a collective bargaining agreement (CBA). (F.F. No. 2.)

In October 2015, Employer's Manager of Labor Relations, Pat Caro (Manager or Caro), met with Claimant to discuss numerous emails that Claimant sent daily to other employees that were upsetting to both the Union and Employer. (F.F. No. 3.) While Claimant refrained from sending such emails for several months, the emails began again in May 2016, after Claimant was passed over for a promotion and denied out-of-class pay. (F.F. No. 4.) Caro met with Claimant a second time on May 5, 2016, to discuss those emails. (F.F. No. 5.)

After receiving a tip box complaint from Claimant on May 16, 2016, the Chief Compliance Officer, Ray Morrow (CCO or Morrow), scheduled a meeting with Claimant on May 17, 2016. (F.F. No. 6.) Claimant continued to send emails to Morrow on May 17, 2016, many of which were sent during non-working hours. (F.F. No. 7.) At the May 17 meeting, Claimant became "erratic, confrontational, aggressive and loud." (F.F. No. 9.) Because Morrow became loud in response, his assistant called the Pennsylvania State Police, who responded to the incident. (F.F. Nos. 10-11.)

Employer met with Claimant on May 23, 2016, and gave him a verbal warning. (F.F. No. 12.) Upon the request of Employer, Claimant underwent a fitness for duty examination and completed the recommended treatment during a leave of absence. (F.F. Nos. 13-14.)

Claimant returned to work on June 15, 2016. (F.F. No. 15.) On that same day, Claimant's supervisor, Brian Rotheram (supervisor or Rotheram), sent an email to the employees under his supervision, including Claimant, which provided a phone number and instructions to notify Rotheram of an absence from work. (F.F. No. 16.)

2

Claimant's regular work hours ran from 7:30 a.m. to 3:30 p.m. (F.F. No. 17.) On July 29, 2016, Claimant sent a text message to his supervisor at 7:51 a.m. to notify him that he would be arriving at work one hour late. (F.F. No. 18.) Claimant sent a text message to his supervisor again on August 3, 2016, at 8:18 a.m., to notify him that he would arrive at work at 9:30 a.m. (F.F. No. 19.) Rotheram responded, stating, "Ok thanks. In the future if you are going to be late please let me know [before] your start time so I'm not wondering where you are." (F.F. No. 20.) At 9:53 a.m., after being unable to locate Claimant, Rotheram sent a second text message to Claimant to find out where he was. (F.F. No. 21.) Claimant responded to Rotheram via text at 9:59 a.m., telling him that he notified the union steward, Paul, that he would not be into work that day. (F.F. Nos. 22-23.) On August 4, 2016, at 7:31 a.m., Claimant again texted his supervisor to tell him that he would be using leave time to take the day off. (F.F. No. 24.)

Claimant received a discipline letter from the CCO, on behalf of his supervisor, on August 11, 2016. (F.F. No. 25.) Rotheram was on vacation from August 11 through August 18, 2016. (F.F. No. 26.) In response to the letter, Claimant discussed the filing of a grievance with Caro, who provided him with the necessary information, but advised him to wait to file the grievance until his supervisor returned from vacation and could discuss the matter. (F.F. No. 27.)

Meanwhile, on August 17, 2016, Claimant sent five text messages to Rotheram between the hours of 4:34 p.m. and 6:17 p.m. (F.F. Nos. 28-29.) Because he felt harassed, Rotheram spoke to Caro. Upon Caro's advice, Rotheram sent the following text message to Claimant at 6:17 p.m.: "Please cease and desist any further texts during non-working hours immediately unless you're informing me you won't be at work by your start time or you need the day off. Any further texts will be considered harassment." (F.F. No. 31; N.T. at 14.) In response, at 6:49 p.m., Claimant texted

Rotheram, "And [t]he same instruction back at you Brian. I am requesting Mr. Paul Morrison set up a meeting with Labor Relations to transfer me out immediately." (F.F. No. 32.)

The next day, on August 18, 2016, Employer terminated Claimant for "continued, repeated text messages to employees which was a violation of Article 7, Section 4 of the [CBA], pertaining to substantial interference with an individual's work or performance; or creation of an intimidating, hostile or offensive working environment." (F.F. No. 33; N.T. at 8-9.)

Claimant filed an initial claim for unemployment compensation benefits on August 19, 2016. (Reproduced Record (R.R.) at 2.) On September 23, 2016, the local service center denied Claimant benefits under section 402(e) of the Law. (R.R. at 6.)

Claimant appealed, and the matter was assigned to a referee. After a hearing on November 2, 2016, the referee affirmed the decision of the local service center. (R.R. at 20.) Claimant appealed to the Board, which also concluded that Claimant was ineligible for benefits under section 402(e) of the Law. (R.R. at 24.) Claimant filed a timely appeal to this Court.[2]

On appeal,[3] Claimant argues that: (1) the Board erred in determining that he knowingly violated a work rule and engaged in willful misconduct in violation of Article 7, Section 4 of the CBA; (2) the Board erred in affirming the referee's decision dated November 7, 2016, because there was no substantial evidence of record to

---

[2] Before his appeal to this Court, Claimant filed a request for reconsideration of the Board's decision. (R.R. at 25.) The Board denied that request on April 3, 2017. (R.R. 29.) Because Claimant filed his petition for review on April 10, 2017, his appeal from the Board's March 15, 2017 decision on the merits was timely filed.

[3] On appeal, our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015).

4

support a determination of willful misconduct; (3) Claimant did not engage in unlawful discrimination or discriminatory harassment and was deprived of an impartial Equal Employment Opportunity Commission investigation prior to discharge; and (4) Claimant's termination violated the progressive disciplinary system provided for in Article 25, Section 1 of the CBA. (Petitioner's brief at 14.)

**Willful Misconduct**

Claimant argues that the Board erred in its determination of "willful misconduct" because: (1) he had no knowledge of the work rule set forth in Article 7, Section 4 of the CBA; and (2) no substantial evidence of record exists to support a finding of "willful misconduct." Both arguments must fail.

Section 402(e) of the Law provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this [Law]." 43 P.S. §802(e). We have defined "willful misconduct" as: "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). The initial burden is on the employer to demonstrate the existence of a work rule, *Yost v. Unemployment Compensation Board of Review*, 42 A.3d 1158, 1162 (Pa. Cmwlth. 2012), and to establish that the claimant engaged in willful misconduct in violation of that rule. *Johns*, 87 A.3d at 1010. Once the employer meets its burden, the burden then shifts to the claimant to establish that the violation occurred for good cause. *Yost*, 42 A.3d at 1162.

"Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal." *Johns*, 87 A.3d at 1010. However, in unemployment cases, the Board is the ultimate fact finder. *Gioia v. Unemployment Compensation Board of Review*, 661 A.2d 34, 36 (Pa. Cmwlth. 1995). "Findings of fact are conclusive upon review provided that the record, taken as a whole, contains substantial evidence to support the findings." *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008).

In this case, Claimant was denied unemployment compensation benefits based upon his willful misconduct in violation of Article 7, Section 4 of the CBA, which provides:

> The [Pennsylvania Turnpike] Commission and the Union agree that all employees have a right to a work environment free of discriminatory harassment including, but not limited to, sexual, racial, and ethnic harassment and other discriminatory harassment based on an employee's legally protected status under federal law and/or the law of the Commonwealth of Pennsylvania.
>
> Discriminatory harassment is conduct that has as its purpose or effect:
> - Substantial interference with an individual's work or performance; or
> - Creation of an intimidating, hostile or offensive working environment.
>
> Discriminatory harassment encompasses a wide range of unwanted behavior, including:
> - Verbal harassment or abuse (even in the guise of "humor");
> - Subtle pressure for sexual activity;
> - Racially, ethnically, or sexually directed remarks about a worker's clothing, body, appearance or sexual activities;
> - Unwanted touching, patting, or pinching;
> - Leering or ogling of a worker's body;

6

- Demanding sexual favors accompanied by implied or overt threats; or
- Physical assault.

The [Pennsylvania Turnpike] Commission and the Union strongly condemn discriminatory harassment of any nature in the workplace. An employee alleging a claim under this Section shall have recourse to the grievance procedure. Notwithstanding Article 25, an employee charged with an offense under this section shall be placed in the progressive disciplinary system in the step commensurate with the seriousness of the offense for which he is charged.

(N.T. at E-1.)

Claimant first contends that he had no knowledge of this work rule and, therefore, could not have deliberately violated it. This argument is without merit. We have previously found that "an employee is charged with constructive notice of [a] rule or policy [if] it could have been discovered by due diligence." *Gibson v. Unemployment Compensation Board of Review*, 760 A.2d 492, 495 (Pa. Cmwlth. 2000). Here, Claimant is a member of the Union and admits that the CBA governed the terms of his employment with Employer. As a union member and an employee, Claimant is presumed to have constructive knowledge of the provisions of his CBA. *See, e.g., Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir. 1985) (finding that an employee is charged with constructive knowledge of his own collective bargaining agreement's expressed terms and his ignorance of such does not constitute due diligence).

Claimant next argues that the record does not contain substantial and credible evidence to support a determination of "willful misconduct." As explained above, the initial burden is on Employer to demonstrate the existence of a work rule and to demonstrate that Claimant willfully violated that rule. Here, we find that Employer met that burden, as the record is replete with credible evidence to show that

7

Claimant was aware of his misconduct, yet, after multiple warnings, continued to engage in the same violative behavior.

At a hearing before the referee on November 2, 2016, both Claimant and Employer had the opportunity to present witnesses and testimony to support their respective positions. While Employer presented the testimony of three witnesses, Claimant chose not to present testimony to the referee. Employer first presented the testimony of the Manager, Pat Caro. Caro testified that he, along with a Union representative, met with Claimant in October 2015, to discuss Claimant's daily emails regarding the conduct of other employees. (N.T. at 10.) Caro testified that Claimant seemed to understand the discussion and that such emails ceased until May 2016, at which time Claimant began sending numerous emails regarding the fact that he was passed up for a promotion and denied out-of-class pay. *Id.* Caro then explained that he met with Claimant again on May 5, 2016, to provide the "friendly advice" that the emails alleging a "rigged" promotional process needed to stop. *Id.* Because Claimant continued to send emails of a similar nature, a third meeting was held on May 23, 2015. (N.T. at 11.) The Human Resources Director and Chief Operating Officer of Employer were present at the May 23 meeting, and Claimant was directed to complete a fitness for duty evaluation. *Id.* Finally, Caro testified that he spoke to Claimant on August 12, 2016, regarding Claimant's receipt of a written discipline letter, at which time he advised Claimant to speak to his supervisor about filing a grievance. (N.T. at 12.)

Next, Employer presented the testimony of Ray Morrow, its CCO. Morrow testified that he received a tip box complaint from Claimant on May 16, 2016, regarding alleged impropriety in the promotional process. (N.T. at 24.) When he met with Claimant to discuss the complaint, Claimant became loud and aggressive. (N.T. at 25.) Morrow verified that he fully reviewed Claimant's tip box complaint and determined there was no merit to Claimant's allegations. (N.T. at 26.) Morrow

8

testified that he met with Claimant again on August 11, 2016, when he presented Claimant with a written warning letter regarding disciplinary issues. (N.T. at 27.)

Finally, Employer presented the testimony of Brian Rotheram, Claimant's supervisor. Rotheram testified that he received numerous text messages from Claimant outside of his working hours and regarding subjects unrelated to his attendance at work. Rotheram testified that Claimant was expected to work from 7:30 a.m. to 3:30 p.m. each day. (N.T. at 32.) He testified that, on July 29, 2016, he received a text message from Claimant informing him that he would be late for work that day. *Id.* Rotheram testified that he received a similar text on August 3, 2016 at 8:18 a.m., and that he responded by asking Claimant to notify him prior to 7:30 a.m. if he would be late for work on a given day. *Id.* On that same day, two and a half hours after his shift started, Claimant again texted Rotheram that he would not be in that day due to an illness and that he had previously notified his union steward of the same. (N.T. at 33.) Rotheram then testified that, on August 4, 2016, he received a text from Claimant at 7:31 a.m. to tell him that he would be using leave time to take the day off. *Id.*

Rotheram then testified to the final events preceding Claimant's termination. On August 17, 2016, Claimant sent Rotheram, who was on vacation, a series of text messages regarding his desire to file a grievance. (N.T. at 35.) Rotheram testified that he sought the advice of the Manager, and, following that advice, sent a text message to Claimant directing him to cease and desist from sending any text messages during non-working hours unless those texts were directly related to Claimant's attendance at work, and informing Claimant that any further texts would be considered harassment. *Id.* After Claimant sent yet another text to Rotheram that evening, he was ultimately issued a termination letter on August 18, 2016.

The referee and the Board, in adopting the findings of fact of the referee, found Employer's testimony to be credible. As substantial evidence exists to support

9

those findings, the referee's findings of fact are conclusive. Thus, we find that Employer has clearly met its burden of establishing the "willful misconduct" of Claimant.

The burden then shifts to Claimant to show that he had good cause for the violation. Because Claimant presented no evidence of record to suggest that he had good cause to violate Employer's work rule, we cannot find that he met his burden.

### Employer's Progressive Disciplinary Process

Claimant also argues that the Board erred in finding "willful misconduct" because the Employer did not follow its progressive disciplinary procedure provided for in Article 25, Section 1 of the CBA. Employer counters that Claimant waived this argument because Article 25, Section 1 was not included in the record before the referee. The Board agreed with Employer, stating, "[C]laimant has included extra-record evidence in this appeal to the Board which the Board cannot consider on appeal." (Board's op. at 1.) We agree.

The record before us does not properly include Article 25, Section 1 of the CBA. Although Claimant attached the language of this provision to his petition for review, we cannot consider it in our review, as it is not part of the certified record before us on appeal. We explained in *McKenna v. Pennsylvania State Horse Racing Commission*, 475 A.2d 505 (Pa. Cmwlth. 1984), that "we may not . . . consider auxiliary information appended to a brief which is not part of the certified record, and, furthermore, we must decide the issues based upon the record before us." *Id.* at 507; *see also Croft v. Unemployment Compensation Board of Review*, 662 A.2d 24, 28 (Pa. Cmwlth. 1995) (citing *McKenna*).

## Admissibility of Article 7, Section 4

Similarly, Claimant also attempts to argue that the referee erred in overruling his objection to the admissibility of Article 7, Section 4 of the CBA. At the hearing before the referee, Employer offered this excerpt of the CBA into evidence. (N.T. at 4-5.) Claimant objected on the bases that said exhibit was neither the entirety of the CBA, nor the entirety of Article 7, and that it was not evident that the excerpt came from the CBA in effect between the Employer and Claimant. (N.T. at 5, 15-16.) In response, Caro testified that although two collective bargaining agreements exist— a field agreement and a central office agreement—the relevant language in each is identical. Caro credibly testified that the copy of the entirety of Article 7 that he presented at the hearing is the actual language of the CBA relevant to this case. (N.T. at 15-17.) Based upon the Caro's testimony, we find Claimant's argument with respect to the admissibility of Article 7, Section 4 to be without merit.

Importantly, we note that Claimant himself could have moved to enter the full CBA into evidence had he been concerned with either the accuracy of the copy of Article 7, Section 4 presented by Employer, or the fact that the entire CBA was not before the referee for consideration.

## Discrimination against a "Protected Class"

Finally, Claimant argues that he did not violate Article 7, Section 4 of the CBA because he did not discriminate against a protected class. Employer asserts that Claimant waived this argument because he failed to raise it before either the referee or the Board. We agree with Employer.

It is well-settled that issues not raised before the referee or Board are "waived for purposes of appeal, and [will not] be addressed for the first time by this Court [on] appeal." *Chapman v. Unemployment Compensation Board of Review*, 20

11

A.3d 603, 611 (Pa. Cmwlth. 2011). Furthermore, Claimant failed to comply with Pa. R.A.P. 2117(c) by setting forth in his brief the manner in which this issue was raised or preserved in the prior proceedings. Pa. R.A.P. 2117; *see Chapman*, 20 A.3d at 611.

## Conclusion

Because substantial evidence supports the Board's conclusion that Claimant engaged in willful misconduct in violation of Article 7, Section 4 of the CBA, and Claimant failed to establish good cause for that violation, the Board did not err in affirming the referee's decision and holding that Claimant was ineligible for unemployment compensation benefits under section 402(e) of the Law.

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin Fishbein,                          :
                 Petitioner               :
                                          :    No.  536 C.D. 2017
           v.                             :
                                          :
Unemployment Compensation                 :
Board of Review,                          :
                 Respondent               :

## *ORDER*

AND NOW, this 27th day of October, 2017, the order of the Unemployment Compensation Board of Review dated March 15, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge