# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| Alicia Schreiner-Orr, | | : | |
| | Petitioner | : | |
| | | : | |
| v. | | : | No. 1580 C.D. 2019 |
| | | : | SUBMITTED: June 12, 2020 |
| Unemployment Compensation Board | | : | |
| of Review, | | : | |
| | Respondent | : | |

BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
                      HONORABLE ELLEN CEISLER, Judge
                      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                              **FILED:  July 10, 2020**

Alicia Schreiner-Orr, Claimant, petitions for review of an order of the Unemployment Compensation Board of Review that affirmed the referee's decision finding Claimant ineligible for unemployment compensation benefits because her actions constituted willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

The facts as found by the Board are as follows.  A residential counselor at a rehabilitation facility for substance abuse, Claimant worked for Livengrin Foundation, Inc., Employer, from May 8, 2005, to May 23, 2019, at a final annual salary of $58,675.50.  (Board's November 1, 2019 Decision, Finding of Fact "F.F." No. 1.)  Employer had a policy requiring its employees to "contact the Administrator

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

on Call to consult before facilitating the transfer of a patient to another facility." (F.F. No. 3.) Claimant was aware of that policy. (F.F. No. 4.)

On May 2, 2019, "a former employee, who is the Executive Director of a California all-women treatment facility, and two individuals accompanying her entered [E]mployer's campus to visit [C]laimant." (F.F. No. 5.) Claimant had no advance notice of either their visit or failure to register with security. (F.F. No. 6.) That same day, "a patient for whom [C]laimant was a counselor, presented with drug withdrawal symptoms and was the victim of a recent sexual assault." (F.F. No. 7.) Notwithstanding Employer's patient-transfer policy, Claimant initiated the patient's transfer to the California facility between May 2 and 3 without contacting the Administrator on Call. (F.F. Nos. 8 and 9.) Upon becoming aware of the patient's scheduled transfer, Employer cancelled it and transferred the patient to a local treatment facility that met the patient's needs. (F.F. No. 10.) Subsequently, Employer discharged Claimant from employment for failure to follow its policies for patient transfer and visitors. (F.F. No. 11.)

The Erie UC Service Center denied Claimant's application for unemployment compensation benefits. On appeal, the referee conducted a hearing at which Claimant with two witnesses and one witness for Employer appeared and testified. The referee concluded that Employer discharged Claimant for permitting the former employee onto the campus without a visitor's badge, emailing proprietary patient information in violation of patient privacy laws, patient brokering, and patient abuse. Mindful that where there are multiple reasons for discharge only one need rise to the level of willful misconduct for a claimant to be disqualified from receiving benefits,[2] the referee determined that Employer established Claimant's

---

[2] *Glenn v. Unemployment Comp. Bd. of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007).

2

willful misconduct by virtue of her attempt to email a patient list and insurance information to the former employee. In so doing, the referee rejected Claimant's testimony that she intended to email that information to a current coworker. However, the referee concluded that Employer failed to establish that Claimant committed patient abuse or failed to follow the policies for visitors and patient transfers.

The Board issued its own decision, affirming on somewhat different grounds. Noting Employer's acknowledgment that it only discovered the potential patient-privacy violation after Claimant's discharge, the Board concluded that the violation was not the proximate cause of Claimant's dismissal. Consequently, the Board focused on the two reasons for termination that Employer identified at the time of Claimant's discharge: failure to follow visitor and patient-transfer policies. Like the referee, the Board concluded that Employer failed to demonstrate that Claimant engaged in willful misconduct by violating the visitor policy. However, the Board determined that Claimant's failure to follow Employer's patient-transfer policy constituted willful misconduct. Claimant's petition for review followed.

Section 402(e) of the Law provides, in pertinent part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). The term "willful misconduct" has been defined to include: (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of work rules; (3) the disregard of standards of behavior which an employer can rightfully expect of its employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and

3

obligations. *Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786, 792 (Pa. Cmwlth. 2008). Whether an employee's actions constitute willful misconduct is a question of law over which we exercise plenary review. *Frazier v. Unemployment Comp. Bd. of Review*, 833 A.2d 1181 (Pa. Cmwlth. 2003).

Additionally, the employer bears the initial burden of proving that the employee engaged in willful misconduct. *Yost v. Unemployment Comp. Bd. of Review*, 42 A.3d 1158, 1162 (Pa. Cmwlth. 2012). If the willful misconduct charge is based upon a violation of a work rule, the employer must prove the existence of the rule and its violation. *Caterpillar, Inc. v. Unemployment Comp. Bd. of Review*, 703 A.2d 452, 456 (Pa. 1997). The Court then determines whether the violation constitutes willful misconduct by examining whether the work rule is reasonable in light of all of the circumstances and, if so, whether the employee had good cause to violate the rule. *Id.* Reasonableness is determined by whether the employer's application of the rule under the circumstances is fair, just and appropriate to pursue a legitimate interest. *Id.*

In the present case, Claimant contends that Employer failed to present testimonial or documentary evidence of any clear patient-transfer policy of which she knew or should have known and that, accordingly, there is no substantial evidence to support the Board's determination that she violated a work rule by failing to consult with the Administrator on Call before working to transfer a patient to another facility. Additionally, assuming arguendo that this Court determines that Employer established such a rule, she contends that her uncontradicted evidence establishes that she was justified in departing from the work rule when she referred a patient to another facility without consulting the Administrator on Call.

4

Claimant's arguments are without merit. As the Board concluded, Employer established its patient-transfer policy via the credible testimony of Employer's Vice President of Human Resources, Ms. Luanne Ramsey. As the Administrator on Call during the relevant period, Ms. Ramsey testified that when Employer cannot meet the clinical needs of certain patients, it has to transfer them to another treatment facility. (August 2, 2019 Hearing, Notes of Testimony "N.T." at 8; Reproduced Record "R.R." at 52a.) As part of the transfer process, Employer's policy requires employees to contact clinical leaders, including the Administrator on Call. (*Id*.) With respect to the fragile patient at issue, Ms. Ramsey testified that Claimant failed to "contact[] the [Administrator on Call] or any of the clinical leaders so that our medical director, who is a psychiatrist, or vice president of clinical . . . could have been consulted." (*Id*.) Ms. Ramsey emphasized that following the proper protocol was important in a case such as this one involving a patient who had suffered recent trauma, was experiencing active withdrawal, and was on probation. (N.T. at 8-9; R.R. at 52a-53a.)

As for Claimant's knowledge of the patient-transfer policy, the Board accepted Ms. Ramsey's testimony that "I would submit that [Claimant] after 15 years of employment this round, had understood and knew . . . those policies, protocol, or had prior knowledge of other facilities that could provide the treatment . . . ." (*Id*.) Additionally, Claimant acknowledged in the internet initial claims form that she was aware of the patient-transfer rule and that Employer discharged her for violating that rule. (Record, Item No. 5; R.R. at 7a.)

A work rule need not be written in order for its violation to constitute willful misconduct. *Graham v. Unemployment Comp. Bd. of Review*, 840 A.2d 1054, 1057 (Pa. Cmwlth. 2004). It is sufficient for the rule to be known. *James v.*

*Unemployment Comp. Bd. of Review*, 429 A.2d 782 (Pa. Cmwlth. 1981). Additionally, the Board is the ultimate finder of fact in unemployment compensation cases with the power to determine credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985); *Oliver v. Unemployment Comp. Bd. of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010). Its findings of fact are conclusive on appeal when the record, in its entirety, contains substantial evidence to support those findings. *Oliver*, 5 A.3d at 438. As long as there is substantial evidence for the findings, "[t]he fact that [a party] may have produced witnesses who gave a different version of the events, or that [a party] might view the testimony differently than the Board, is not grounds for reversal . . . ." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994).

Here, the Board chose to accept Employer's testimony regarding the patient-transfer policy and we cannot overturn that credibility determination on appeal. *Fitzpatrick v. Unemployment Comp. Bd. of Review*, 616 A.2d 110, 111 (Pa. Cmwlth. 1992). Additionally, we are bound to view the evidence in the light most favorable to Employer, as the party that prevailed before the Board, and give Employer the benefit of all inferences that can logically and reasonably be drawn from the testimony. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

Having determined that Employer established the existence of the patient-transfer policy and Claimant's intentional violation of that policy, we turn to Claimant's argument that she was justified in departing from the policy. Claimant references her uncontradicted testimony that she consulted with the nurse practitioner, the patient care coordinator, and the director of admissions, all of whom

6

she alleges suggested referring the patient to the other facility. (N.T. at 18-21; R.R. at 62a-65a.) Further, she notes her allegedly uncontradicted testimony that she was acting in the best interests of a patient who had suffered sexual trauma and required an all-female facility. Accordingly, she maintains that her actions did not constitute willful misconduct because she acted to further the interests of Employer's mission and to provide service to a patient in dire need of appropriate care.

Claimant's argument as to good cause is without merit. The Board determined that she failed to offer credible testimony to establish good cause for her failure to follow the patient-transfer protocol. (Board's Decision at 3.) As noted, the Board is the ultimate arbiter of credibility and it accepted Employer's version of the events. Additionally, Ms. Ramsey's credible testimony contradicts the testimony that Claimant proffered in support of her position that she was acting in the best interests of the patient and, therefore, Employer. In that respect, Ms. Ramsey alluded to the reasons for the protocol and why Claimant's failure to follow it in this instance was especially detrimental to the patient. In relevant part, Ms. Ramsey testified:

> [T]his patient had recent sexual trauma and [she] needed a particular set of clinical treatment modalities which [Employer] felt were better served in the women's institution to which we have many we referred to [sic] in the past . . . . Now the patient, because of the recent trauma, was struggling with being around males, and she did not leave our detox unit for that reason; she was struggling to get out of bed . . . . I think it was a risk for the patient to then go to the airport and be put on a plane where she would be exposed to males, go through a security risk, and then be sent thousands of miles away, on her own . . . .

(N.T. at 9; R.R. at 53a.)

7

Accordingly, because we conclude that the Board did not err in determining that Employer sustained its burden of establishing that Claimant's actions constituted willful misconduct and that Claimant failed to establish good cause for violating the patient-transfer policy, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

Judge Fizzano Cannon did not participate in the decision on this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alicia Schreiner-Orr,     :
     Petitioner :
          :
    v.      :  No. 1580 C.D. 2019
          :
Unemployment Compensation Board :
of Review,       :
     Respondent :

# **O R D E R**

AND NOW, this 10th day of July, 2020, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

         _____
         **BONNIE BRIGANCE LEADBETTER,**
         Senior Judge