# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Good Samaritan Hospital,          :
            Petitioner     :
                                :
           v.           :  No. 1224 C.D. 2015
                                :  SUBMITTED: March 4, 2016
Unemployment Compensation   :
Board of Review,           :
            Respondent   :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
SENIOR JUDGE LEADBETTER               FILED: July 28, 2016

Employer, Good Samaritan Hospital, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's decision finding Claimant, Michael B. Umberger, eligible for unemployment compensation benefits because his actions did not constitute willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We reverse.

From March 2013 to November 2014, Claimant worked as a full-time registered nurse for Employer at a final hourly rate of $26.65.  Referee's March 27,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

2015, Decision, Finding of Fact (F.F.) No. 1. Employer has an e-mail policy prohibiting chain letters and other forms of repetitive mass mailings on its e-mail system and considers any misuse of its system to be a security compromise, warranting an immediate documented warning. *Id*., No. 2. Repeated warnings for the same activities may amount to a security breach, warranting the immediate suspension of the offending employee's access to Employer's computer system and a referral to its human resources department for possible sanctions.[2] *Id*., Nos. 4 and 5. In addition, Employer has a progressive disciplinary process, which includes a verbal warning, a written warning, suspension and termination. Employer's discipline policy, however, permits it to bypass these disciplinary steps dependent upon the severity of the circumstances. *Id*., Nos. 6 and 7. Claimant was aware of Employer's policies. *Id*., No. 8.

Following Employer's denial of Claimant's application for a religious exemption from the flu vaccine required for its employees, Claimant composed an e-mail stating that Employer planned to discharge him due to its denial of his application, expressing his disappointment with its decision and asking recipients in a similar situation to contact him. *Id*., No. 13. When Claimant attempted to send that e-mail to all of Employer's employees at once, however, he was unable to do so, "because he did not have permission to use that distribution list." *Id*., No.

---

[2] Employer's manual defines a "security compromise" as follows: "[A]n unintentional act caused by a poor security practice though no violation of patient or GSHS [Good Samaritan Hospital Systems] Information Resources has occurred (e.g. walking away from computer in a common area without locking it or logging off)." Original Record (O.R.), Item No. 3, Employer Separation Information at 7; Reproduced Record (R.R.) at 27a. It defines a "security breach" as follows: "[A] willful or premeditated act that violates, or has the potential to violate, the security and integrity of patient or GSHS Information Resources (*e.g.* sharing passwords, sharing unauthorized copies of electronic information, etc.)." *Id*.

11. Consequently, he chose to send his e-mail successively to groups of employees.[3] *Id*., No. 12. A few hours later and notwithstanding the absence of disciplinary actions in his employment record, Employer discharged Claimant from employment for violation of its e-mail policy. *Id*., Nos. 14 and 15. Claimant subsequently applied for unemployment compensation benefits and the UC Service Center found him to be ineligible.

After a hearing at which both Claimant and Employer appeared and presented evidence, the referee reversed. In determining that Employer failed to establish that it discharged Claimant for actions that constituted willful misconduct, the referee reasoned as follows:

> [T]he record establishes that the claimant sent one mass email. The employer's policy refers to repetitive mass mailings. Accordingly, it is unclear that a single mass mailing is in violation of the policy. Even if the mass email otherwise qualifies as misuse of the employer's email, the employer does not adequately explain how a single mass email constitutes a serious circumstances [sic] which would justify bypassing all lower steps of discipline when the claimant had no previous disciplinary actions.

Referee's March 27, 2015, Decision at 2. The Board affirmed, adopting and incorporating all of the referee's findings and conclusions. In addition, it determined that Employer failed to provide sufficient justification for discharging Claimant where its policy specifically provided for a documented warning for the

---

[3] The record reflects that, on the day of his discharge from employment, Claimant sent his e-mail thirteen times and in relatively quick succession to large groups of different employees. O.R., Item No. 16, March 23, 2015, Hearing Transcript, Employer Exhibit No. 4; R.R. at 17a-19a.

3

first offense of a security compromise. Employer's timely petition for review followed and we have before us briefs from Employer, the Board and Claimant.[4]

Section 402(e) provides, in pertinent part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). The term "willful misconduct" has been defined to include (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior that an employer can rightfully expect of its employee; or (4) negligence that manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786, 792 (Pa. Cmwlth. 2008). The employer bears the initial burden of proving that a claimant engaged in willful misconduct and, if the willful misconduct charge is based upon a violation of a work rule, the employer must prove the existence of the rule, its reasonableness, and that the employee was aware of the rule. *Brown v. Unemployment Comp. Bd. of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Once an employer satisfies its prima facie case, the burden shifts to the claimant to demonstrate that the rule was unreasonable or that he had good cause for his conduct. *Id*. The claimant has good cause if his action "is justifiable or reasonable under the circumstances[.]" *Frumento v. Unemployment Comp. Bd. of Review*, 351 A.2d 631, 634 (Pa. 1976).

---

[4] Whether a claimant's actions constitute willful misconduct is a question of law over which we exercise plenary review. *Yost v. Unemployment Comp. Bd. of Review*, 42 A.3d 1158, 1162 (Pa. Cmwlth. 2012).

On appeal, Employer argues that the record does not support the fact-finding that Claimant's actions constituted a security compromise rather than a security breach, where again a security compromise warrants only a documented warning for the first offense while a security breach warrants an immediate suspension pending an investigation. It emphasizes that Claimant sent thirteen successive, albeit identical, e-mails to large groups of employees and argues that those repetitive actions constituted a security breach justifying immediate termination. In addition, Employer maintains that there is no support for the determination that it failed to provide sufficient grounds for terminating Claimant's employment when the nominal discipline was an immediate documented warning but it chose immediate discharge.[5]

Contrary to Employer's contention, the record supports the Board's findings that Employer discharged Claimant for violation of its e-mail policy, that any misuse of e-mail is a security compromise and that the nominal discipline for that violation is an immediate documented warning.[6] Consistent with Employer's

---

[5] As the Board observes, Employer in its statement of objections to the determination did not specify, by number, the fact-findings that it was contesting. It is clear, however, that Employer is challenging the Board's interpretation and application of Employer's policies and the Board's subsequent conclusion that, based on those policies, Employer's decision to terminate Claimant's employment was unwarranted. July 24, 2015, Amended Petition for Review, ¶ 5 at 2.

[6] The support in the record is found both in the documentary evidence and the testimony of one of Employer's witnesses. Specifically, the letter that Employer sent to Claimant confirming his discharge provides as follows: "On November 25, 2014 between 10:10am and 11:55am you sent mass emails to multiple groups of employees. This repetitive mass emailing is a direct violation of policy AD-12 Systems Assurance, a copy of which is enclosed." O.R., Item No. 3, Employer Separation Information at 3; R.R. at 7a. Pursuant to that policy: "Chain letters and other forms of repetitive mass mailings are not allowed. Any misuse of Email will be considered a Security Compromise." *Id.* at 6; R.R. at 26a. In addition, as one of Employer's witnesses testified: "Michael returned my phone call and I told him that he was going to be terminated effective immediately due to misuse of the email system." March 23, 2015, Hearing Notes of Testimony (N.T.) at 22; R.R. at 26a (emphasis added). Regarding the nominal discipline for **(Footnote continued on next page…)**

5

argument, however, the record does not support the Board's determination that Claimant sent one mass e-mail.[7] Regardless, as the Board also found, Employer's disciplinary policies permit it to bypass disciplinary steps due to the severity of some circumstances. Specifically, Employer's policy provides:

> Any or all disciplinary steps may be bypassed due to the seriousness of some circumstances, behaviors or conduct. Immediate suspension or discharge may be warranted. Nothing in this policy will be construed to limit the rights of GSHS to suspend or discharge an employee immediately for reasons set forth anywhere in this policy.

Original Record (O.R.), Item No. 3, Employer Separation Information at 12; Reproduced Record (R.R.) at 32a. In this regard, Employer's policies provide that discipline for the violation of *any* of its policies may include immediate discharge. *Id*. at 13; R.R. at 33a. Accordingly, notwithstanding the fact that Employer's policies provide for a sanction short of discharge, its policies also give it discretion to impose enhanced discipline for even the first offense of the conduct in question.

Employer next argues that there is no support for the determination that it failed to provide sufficient justification for terminating Claimant's employment when the nominal discipline was an immediate documented warning. In this regard, the parties do not dispute the reasonableness of the rule, but that Employer's chosen discipline in response to Claimant's violation was excessive

---

**(continued…)**
misuse of e-mail, Employer's policy, in pertinent part, provides: "The instance of a Security Compromise will be cause for an immediate documented warning . . . ." O.R., Item No. 3, Employer Separation Information, at 4-5; R.R. at 24-25a.

[7] Claimant testified that when he was unable to select the option to send his e-mail to "everybody," he "pick[ed] sections" of e-mail recipients. March 23, 2015, Hearing, N.T. at 37-38; R.R. at 81a-82a. As Employer's Exhibit No. 4 indicates, Claimant made his selections thirteen times. *See supra* note 3. Accordingly, even though Claimant's e-mail was identical, he sent it thirteen times.

6

and contrary to Employer's policies. In effect, their real dispute goes to the essential issue of whether Claimant's actions constituted sufficiently severe misconduct as to warrant the enhanced discipline.

Notwithstanding the Board's unsupported determination that Claimant sent *one* mass e-mail, it is beyond dispute that, within a relatively short time period and in thirteen successive e-mails, Claimant accomplished with only a few keystrokes what Employer's restriction on its employees' ability to choose the "all employee" e-mail distribution list prevented him from doing even faster initially: sending repetitive mass e-mails to large groups of different employees.[8] Even if we examine the evidence in the light most favorable to Claimant, in whose favor the Board found, giving him the benefit of all inferences that can logically and reasonably be drawn,[9] the evidence reflects Claimant's acknowledgement of Employer's e-mail policies and his deliberate decision to flout Employer's prohibition against mass e-mails by circumventing the restrictions on the distribution list and sending thirteen e-mails.[10] Accordingly, we conclude that Claimant's actions constituted willful misconduct.

Furthermore, the fact that Employer's policies provide for discipline short of discharge does not negate Claimant's termination for willful misconduct where its policies clearly afford it discretion to impose a different and greater sanction for his actions and it chose to do so. *See Johnson v. Unemployment Comp. Bd. of Review*, 744 A.2d 817, 821 (Pa. Cmwlth. 2000); *Seton Co. v.*

---

[8] While it is true that Employer's policies also provide that, multiple warnings for the same activity may constitute a security breach, Employer, as a practical matter, most likely did not have the opportunity to issue *any* warnings given the relatively quick succession of Claimant's e-mails.

[9] *Owen v. Unemployment Comp. Bd. of Review*, 363 A.2d 852, 854 (Pa. Cmwlth. 1976).

[10] March 23, 2015 Hearing, N.T. at 37-41; R.R. at 81-85a.

*Unemployment Comp. Bd. of Review*, 663 A.2d 296, 299 (Pa. Cmwlth. 1995). In this regard, the Board's reliance on *Unemployment Compensation Board of Review v. Schmid*, 341 A.2d 553, 555 (Pa. Cmwlth. 1975), is misplaced. In *Schmid*, we held that the claimant's tardiness did not constitute willful misconduct where the employer's rule provided that any worker receiving three disciplinary sanctions of "two days off without pay" would be discharged and claimant had received only two. In support, we observed that, where "the employer gave notice that although tardiness was inimical to its interest, it was not sufficiently inimicable to result in discharge until the employee had received three "two days off without pay" penalties[,]" claimant's conduct did not constitute willful misconduct. In the present case, however, Employer's disciplinary policy did not limit the sanctions that it could impose for the conduct at issue, up to and including discharge.

Moreover, we reject Claimant's efforts to establish that his actions were justifiable or reasonable under the circumstances. Claimant maintains that the content of his e-mail supports the fact that he had good cause for violating Employer's rule prohibiting misuse of its e-mail system and that it did not result in any harm to Employer's interests. The content of Claimant's e-mail, however, is irrelevant. He chose to override Employer's restriction on its employees' ability to choose the "all employee" e-mail distribution list by sending thirteen successive and repetitive mass e-mails to large groups of employees. Pursuant to Employer's policies, the reason that it provides e-mail to its employees is as follows: "Electronic mail ("Email") is provided by the GSHS [Good Samaritan Hospital Systems] to assist in conducting the business of the GSHS." O.R., Item No. 3, Employer Separation Information, at 6; R.R. at 26a. In that regard, Claimant admitted that, instead of directly addressing his concerns with Employer's denial

of his application with human resources personnel, he instead chose to send repetitive mass e-mails in violation of Employer's e-mail policies. March 23, 2015, Hearing, Notes of Testimony at 38, 45; R.R. at 82a, 89a.

Accordingly, having concluded that Claimant's conduct constitutes willful misconduct for which he failed to demonstrate good cause, we reverse.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

Judge McCullough concurs in the result only.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Good Samaritan Hospital,      :
                Petitioner    :
                            :
            v.            :   No. 1224 C.D. 2015
                            :
Unemployment Compensation  :
Board of Review,          :
                Respondent  :

## O R D E R

AND NOW, this 28th day of July 2016, the order of the Unemployment Compensation Board of Review is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge