**Venson L. JOHNSON, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.

Decided Jan. 20, 2000.

Venson L. Johnson, petitioner, pro se.

Howard G. Hopkirk, Harrisburg, for intervenor, Office of Attorney General.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Venson L. Johnson (Claimant) petitions for review from a decision and order of the Unemployment Compensation Board of Review (Board) which denied him benefits pursuant to Section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[1] The Board concluded that Claim-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides in pertinent part:

ant's behavior constituted sexual harassment in violation of the Office of Attorney General's (Employer) policy and was disqualifying willful misconduct. We affirm.

The Board found the following facts. Claimant last worked for Employer as a Special Investigator and his last day of work was May 15, 1998. Claimant was discharged from his employment for sexually harassing a female co-worker. Employer has a policy which prohibits sexual harassment in the work place. Claimant was aware or should have been aware of Employer's policy.

On April 15, 1998, Employer received a formal complaint of sexual harassment from an attorney in the Bureau of Consumer Protection (complainant). The complaint listed many incidents of harassment by Claimant. The complaint alleged that initially Claimant made a series of growling noises on occasions when he would come in contact with complainant, coupled with compliments on her legs and interjections such as "hey, baby". Claimant's action progressed to him leaving voice mail messages for complainant stating, for instance, "I dreamed about you last night." Claimant would also make comments to complainant such as "They (referring to her legs) look—I mean you look really edible today. Grr.", and remarks about complainant looking so luscious that he could eat her. Claimant would also boast to complainant about his sexual prowess with his wife.

Claimant made visits to complainant's office where he would engage in strangely inappropriate gestures, such as running his fingers slowly along the wall of her office, use his middle finger to describe circles on the wall, and licking his lips. In addition to this behavior, Claimant sent complainant a photo of a nude woman with her legs spread open, via the email at her home. When complainant later confided in another female co-worker and complained about receiving the nude photo, Claimant admonished her for telling on him stating "You've been a bad little girl. I'm going to punish you. Why did you have to tell that?" Claimant then sent complainant a poem via email inviting her to engage in a sexual assignation with him at a local hotel. During the following workday Claimant left women's lingerie catalogs on complainant's desk at work with tabbed notes written by Claimant inviting complainant to pick out something for the proposed tryst and suggesting various items that she should select. Additionally, Claimant ran his fingers through complainant's hair on one occasion and put his arm around her waist on another occasion.

Complainant found Claimant's conduct to be both unwelcome and offensive to her, with the email communications being very disturbing. The remark about her looking "luscious" prompted her to respond "you just made my stomach ache." The hair stroking incident prompted her to shout "don't touch me!" She then sought refuge in the women's room where she sobbed in full view of others. Complainant also informed Claimant to "knock it off" regarding the strange gestures in her office and when he would tell her about his sexual prowess with this wife. Complainant did not invite, encourage or welcome the conduct of Claimant. Complainant placed both Claimant and supervisory personnel on notice that Claimant's behavior was both unwelcome and objectionable. Claimant's inappropriate actions adversely impacted on complainant's work life and her physical health.

Claimant regularly complimented all of the women in the office on their appearance, often referring to them as dear heart, sweetheart and other similar terms of endearment. In addition, in meetings and general discussions between groups of

---

An employee shall be ineligible for compensation for any week—

(e) in which his unemployment is due to discharge or temporary suspension from

work for willful misconduct connected with his work. . . .

employees subjects of a sexual nature were discussed. The supervisor of the Bureau of Consumer Protection was frequently present during these discussions but did not voice any objection to the language or subject matter discussed, prior to April 3, 1998. Claimant's actions and comments directed towards complainant went beyond office banter and acceptable behavior. Claimant was not subject to disparate treatment when compared to other employees' actions due to the egregious nature of his behavior. Claimant was not similarly situated as to other employees. Claimant has not justified or otherwise demonstrated good cause for the actions for which he was discharged.

Claimant filed for unemployment compensation benefits. The job center denied him benefits pursuant to Section 402(e) of the Law. Claimant appealed and a referee's hearing was conducted at which Claimant, with counsel and witnesses, and Employer, with counsel and witnesses, appeared and testified. The referee reversed the job center and granted Claimant benefits. Employer appealed to the Board, which after review, by decision and order dated May 10, 1999, reversed the referee's decision and denied Claimant benefits. Claimant petitions for review from that decision and order.

Claimant raises two issues for our review: whether the Board's findings of fact, specifically that his actions rose to the level of willful misconduct, whether he engaged in sexual harassment of a female coworker and whether he did not meet his burden of proving good cause for his actions, are supported by substantial evidence and whether the Board erred as a matter of law in finding that Claimant's actions constituted willful misconduct.[2]

■ Claimant's substantial evidence argument essentially attacks the credibility determination of the Board and focuses on the facts most favorable to him instead of the facts as found by the Board. The Board is the final finder of fact and arbiter of credibility. *Peak v. Com., Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). The Board found Employer's witnesses' testimony to be more credible than Claimant's, as was its prerogative.

■ Claimant argues that the Board erred in reversing the credibility determination of the referee because the Board disregarded his consistent, uncontradicted testimony without stating a reason for doing so as required by *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982). Unfortunately for Claimant this argument has no merit. This Court found in *Carter v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 133, 629 A.2d 212, 216 (1993) that the holding in *Treon*, which requires reasons for the Board's overturning the findings of a referee, is limited to those cases which present the capricious disregard of evidence standard of review. That standard is applied only where the burdened party is the only party to present testimony and evidence and does not prevail. *See Blackwell v. Com., Unemployment Compensation Board of Review*, 124 Pa.Cmwlth. 9, 555 A.2d 279 (1989). *Treon* is not applicable in cases where both parties present testimony and evidence and the substantial evidence standard applies. *Carter*, 629 A.2d at 216. Here, both parties have presented evidence, therefore, the substantial evidence standard applies and *Treon* is inapplicable. According to *Carter* the Board is not required to state its reasons for reversing the referee's credibility determination.

Next, Claimant argues that the Board erred as a matter of law in denying him benefits because Employer did not follow

---

2. Our review of an unemployment compensation case is limited to determining whether constitutional rights were violated, errors of law were committed, or whether findings of fact are supported by substantial evidence. *Sheets v. Unemployment Compensation Board of Review*, 708 A.2d 884 (Pa.Cmwlth.1998).

its disciplinary policy when it discharged him. Claimant cites *PMA Reinsurance Corporation v. Com., Unemployment Compensation Board of Review*, 126 Pa. Cmwlth. 94, 558 A.2d 623 (1989) in support of his argument. We held in *PMA Reinsurance* that where an employer promulgates a specific disciplinary system, it is incumbent upon the employer to follow that system. The promulgation of specific rules puts employees on notice that the employer will not consider such conduct to be adverse to its interests until the requisite number of violations have been committed.

■ Claimant argues that he should not have been discharged without warning. Employer's sexual harassment policy provided in the record states that if harassment prohibited by the policy occurs, immediate steps shall be taken to insure that the harassment is stopped and does not reoccur. This may include suspension or termination of the individual responsible for the harassment. Clearly this policy is discretionary. There are no specific steps Employer must follow before discharging an employee who violates the policy. Therefore, we cannot conclude that the Board erred in denying Claimant benefits since Employer followed its discretionary policy and was not in violation of our holding in *PMA Reinsurance*.

■ Claimant also argues that his behavior was not sexual harassment, but was merely harmless flirtation, and that the Board erred in concluding that his behavior was sexual harassment. Employer's policy, submitted into the record, defines sexual harassment as any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when the conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment. Claimant admitted that he did make comments to complainant, sent her nude photos and explicit emails, touched her and suggested that they have a sexual relationship. Complainant testified that these actions were unwelcome. Clearly this falls within Employer's definition of sexual harassment and was a violation of Employer's policy.

Even if Claimant's behavior had not been in violation of Employer's rule, it still was well beneath the standards of behavior which an employer has a right to expect from an employee. *See Strickhouser v. Unemployment Compensation Board of Review*, 80 Pa.Cmwlth. 587, 471 A.2d 1338 (1984) (claimant's behavior of dropping his pants in front of female co-workers was below the standards of behavior an employer has a right to expect of an employee), *Stover v. Com., Unemployment Compensation Board of Review*, 75 Pa.Cmwlth. 272, 461 A.2d 906 (1983) (claimant's behavior of running his fingers through a female employee's hair was below the standards of behavior an employer has a right to expect of an employee), and *Zuraw v. Com., Unemployment Compensation Board of Review*, 61 Pa.Cmwlth. 548, 434 A.2d 1312 (1981) (claimant's behavior of hugging and touching female employees and removing his pants in front of a female employee is below the standards of behavior an employer has a right to expect of an employee). Accordingly, we cannot conclude that the Board erred in finding that Claimant's behavior constituted willful misconduct.

■ Finally, Claimant argues that Employer discriminatorily enforced its policy alleging that others behaved like he did, but because he was black, he was singled out for termination. The essence of a claim for disparate treatment is not only whether unlawful discrimination has occurred, but also whether similarly situated people are treated differently, based upon improper criteria. *American Racing Equipment, Inc. v. Unemployment Compensation Board of Review*, 144 Pa. Cmwlth. 310, 601 A.2d 480 (1991).

■ The Board did not find Claimant's allegation to be supported by the record.

The Board stated, and we must agree after a review of the record, that Claimant was not subject to disparate treatment when compared to other employees. The Board found that while other employees may have talked about subjects of a sexual nature, Claimant's behavior was of such an egregious nature that he was not similarly situated as to other employees to which he compared himself. Claimant did not provide testimony or evidence that any other employee had been the subject of a sexual harassment complaint of the nature that he had been and had not been discharged according to Employer's policy. Therefore, we cannot conclude that Claimant was the victim of disparate treatment in this case.

Based upon the discussion above, we conclude that the Board did not err in denying Claimant unemployment compensation benefits and the Board's decision and order are affirmed.

## ORDER

AND NOW, this 20th day of January, 2000, the decision and order of the Unemployment Compensation Board of Review at number B-378805, dated May 10, 1999, is affirmed.