# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roberta J. Anderson,                                      :
                              Petitioner              :
                                                         :
               v.                                        :     No. 1056 C.D. 2017
                                                         :     Submitted:  December 29, 2017
Unemployment Compensation                                :
Board of Review,                                         :
                              Respondent           :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*


MEMORANDUM OPINION
BY JUDGE BROBSON                    FILED:  March 20, 2018


               Petitioner Roberta J. Anderson (Claimant) petitions for review of an

order of the Unemployment Compensation Board of Review (Board).  The Board

affirmed the Unemployment Compensation Referee's (Referee) decision, denying

Claimant unemployment compensation benefits pursuant to Section 402(e) of the

Unemployment Compensation Law (Law),[1] based on willful misconduct.  For the

reasons set forth below, we affirm.

               Claimant filed for unemployment compensation benefits subsequent to

her discharge from employment with Country Pride Restaurant (Employer).  The

Erie UC Service Center (Service Center) determined that Claimant was ineligible

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

for unemployment compensation benefits under Section 402(e) of the Law. (Certified Record (C.R.), Item No. 5.) Claimant appealed the Service Center's determination, and a Referee conducted a hearing. Employer presented the testimony of Employer's General Manager, Jody Gemzik ("General Manager"). Claimant testified on her own behalf.

General Manager testified that Claimant began working for Employer in December 2014. (C.R., Item No. 9 at 5.) He stated that she worked as a full-time kitchen specialist three times a week and as a waitress twice a week. (*Id.* at 5.) General Manager testified that after Claimant worked the night shift on January 6, 2017, to January 7, 2017, he noticed that she had given eight senior discounts, a number he considered to be unusual. (*Id.* at 5-6.) Senior discounts are given to those over the age of fifty-five. (*Id.* at 6.) General Manager reviewed the restaurant's video surveillance and observed that some of the customers to whom Claimant gave the discount appeared to be under the age of fifty-five. (*Id.*) Claimant gave a senior discount to one of the restaurant's regular customers, who is known by General Manager to be forty-two years old. (*Id.* at 10.) Claimant also gave the senior discount to three customers who appeared to be in their mid-twenties. (*Id.*) General Manager testified that he confronted Claimant, and she responded that she gave these three customers the discount because their food was cold. (*Id.*) General Manager also testified that, although Claimant had the authority to give a discount for cold food, she was required to indicate the correct reason for the discount on the top of the check. (*Id.* at 6-7.) Instead, Claimant applied the senior discount to their checks, but she did not write an explanation on the checks. (*Id.*) General Manager stated that proper procedure in the restaurant was to use a complaint code and subtract only the price of the food about which a customer complained. (*Id.* at 8.)

2

In both instances, video surveillance showed Claimant taking the customers' money and applying the discounts after they paid. (*Id.* at 11-12.) At the time of hire, Employer's employees are trained on a variety of topics, including discounts. (*Id.* at 15.) This policy is included in the employee handbook, a copy of which is given to new employees and also available online. (*Id.* at 16.) General Manager testified that proper procedure in the restaurant required the discount to be applied before the customer paid, with the customer receiving a reprinted check with a new time on it. (*Id.* at 12.) Employer instructs the employees that if a discount is given, they must write the correct explanation on the customer's check. (*Id.* at 15.) If a manager is present, the employee is required to inform a manager of the problem and the manager will issue the discount. (*Id.* at 15.)

In response, Claimant testified that the three customers in their mid-twenties complained about all of the food they ordered. (*Id.* at 18.) Rather than giving them the food for free, Claimant chose to give them a discount. (*Id.*) Claimant acknowledged that she chose the wrong discount code by choosing senior discount, but she intended to later correct the discount code and write an explanation on the check. (*Id.* at 18-19.) Claimant testified that because of the amount of work she was trying to complete, including the duties of other employees, she forgot to write the reason for the discount on the check. (*Id.*) Claimant also testified that in the past, when she forgot to write the correct discount code or an explanation for the discount on checks, the other managers on duty told her not to worry about it. (*Id.* at 20.)

Claimant also testified that when the three customers were about to leave, she was ready to reprint their checks in order to apply a discount. (*Id.*) Instead, one of the customers insisted that Claimant keep the difference between the

original check and the check with the discount applied so that she had a better tip. (*Id.*) Claimant testified that a similar situation happened with the single customer. (*Id.* at 19.) Claimant stated that he asked her to apply the "old man" discount to his check so that he could give Claimant a bigger tip. (*Id.*) Claimant explained that she complied with this instruction because she was trained to do this by other waitresses. (*Id.*) Claimant also stated that she never received a copy of the handbook and that, her manager completed Employer's test for her at the time of hire, which was based on the employee handbook. (*Id.*) Claimant testified that she believed General Manager fired her because she had called Employer's corporate offices before her discharge, complaining about things that were going on in the store. (*Id.* at 20, 23.) Claimant testified:

> R[eferee]: Okay. All right. Anything else at all Ms. Anderson?
>
> C[laimant]: I just don't understand why I'm being picked on about it when it happens all the time there and there's so many other incidents where like he's saying it's theft from the company, I'm stealing from the company, that, that amount of money is not going to make or break me. I didn't need it. I was getting paid good money to work there and I enjoyed my job. There's other incidents I went personally to him and told him about theft of the company, and nothing was done about it, nothing at all. That's why I don't understand. Well in my mind I know why he did it, it's because I was calling corp on him and Missy because of things that were going on, but that's why I feel he did this to me, but I'm saying when I told him about it and stuff nothing was ever done about it, so why are you, you know, bringing it up unless you were trying to get me out of there because you wanted me to keep my mouth shut. That's what my take is on the whole thing.
>
> R: All right. Anything else at all?
>
> C: I just – I don't feel like I stole anything because I didn't. I waited on people and she told me to keep the difference.

(*Id.* at 23.)

During rebuttal, General Manager testified that Claimant called corporate to make a complaint after her termination and that there were no other calls to corporate before then. (*Id.* at 27.) Only after General Manager's testimony on rebuttal did Claimant expound on her earlier testimony as follows:

> R[eferee]: When did you call corporate?
>
> C[laimant]: I called corporate on – it was like the third week of December, I called like three times, and then right – maybe three days before this – no, four days before this happened I called her and I talked to her, because it used to be Ashley and now it's a new girl, and I called her and I told her what he was trying to do, take my hours away from me, and I also told her other stuff about sexual harassment that I – that it don't necessarily have to be sexual harassment, but if it makes you feel uncomfortable, and she gave me a number to call and I called that number. This was all done like the week before, and then, yeah, that same week after then I started calling more, yes I did. But I have called them before that, and there are records of it, and I have it on my phone at home, records of the issues that I was upset about. And I was told, oh just keep your mouth shut and work. Not by him, but I was just told keep your mouth shut and work, you know, at least you got a job. Well it's not fair and I was mad, and I called them. And I'm [not] going to deny I did because I did it. I probably called them 14 times.
>
> R: Okay. Anything else?
>
> C: No.

(*Id.* at 27-28.)

Following the hearing, the Referee issued a decision, which affirmed the Service Center's determination denying unemployment compensation benefits pursuant to Section 402(e) of the Law. The Referee made the following relevant findings:

5

1. The claimant was employed with Country Pride as a kitchen specialist/server, full-time, from December 2014 until January 7, 2017, her last day of work.

2. Employer has a policy regarding failure to control funds, which provides for discharge upon first offense for failure to secure company funds and/or violating the company cash handling policies.

3. The claimant was aware of the employer's policies.

4. The claimant worked third shift hours from January 6 to January 7, 2017.

5. During her shift, the claimant applied a 20% senior discount to eight tickets out of the 22 total that she handled during that shift.

6. The majority of those eight tickets were not associated with patrons over the age of 55, as required to be issued a senior discount.

7. The claimant applied the senior discount after the patrons had paid their bills and left the establishment, keeping the difference for herself as additional tip money.

8. The claimant was discharged effective January 7, 2017, due to violation of the employer's failure to control funds and cash handling policies.

(C.R., Item No. 10.)

The Referee resolved any conflicts in testimony in Employer's favor. (*Id.*) The Referee found that Employer presented competent testimony and evidence establishing that Claimant failed to control funds and violated cash handling policies. (*Id.*) The Referee stated that she did not find credible Claimant's statement that all the patrons involved instructed her to apply the discount and keep the difference as an additional tip. (*Id.*) The Referee concluded that Claimant's conduct not only

6

violated Employer's policies but also fell below the standards of behavior Employer had the right to expect. (*Id.*) The Referee, therefore, concluded that Claimant's actions rose to the level of willful misconduct and denied her benefits. (*Id.*)

Claimant appealed the Referee's decision to the Board, and the Board affirmed the Referee's decision. (C.R., Item No. 12.) The Board adopted and incorporated the Referee's findings of fact and conclusions of law, but it replaced finding of fact number 6 with the following finding: "At least three of those eight tickets were not associated with patrons over the age of fifty-five as required to be issued a senior discount." (*Id.*) The Board provided the following reasoning for its decision:

> The claimant asserts in her appeal that she was discharged because she called corporate about the general manager and elaborates on why she called corporate. The claimant did not testify to those instances at the hearing therefore there is not enough competent evidence in the record to support a finding that the claimant was discharged because she called corporate rather than for violating the employer's cash handling policy. The claimant also asserts that there was no way that the general manager could have known that the eight patrons the claimant gave senior discounts to were not fifty-five years old. The general manager credibly testified that the first customer in the video was forty-two years old and the group of three customers whom the claimant also gave a discount to were clearly not over fifty-five. Therefore, based on those three transactions alone the claimant violated the employer's cash handling policy.

(*Id.*)

On appeal,[2] Claimant argues substantial evidence does not exist to support a finding that she violated Employer's cash handling policy. We initially note that Claimant does not identify with specificity the Board's findings of fact that she challenges. Claimant contends, in her brief, that her termination was retaliation for the complaint she made to Employer's corporate office regarding General Manager's sexually explicit behavior at work. We construe Claimant's argument as challenging whether the Board's findings of fact numbers 2, 6, 7, and 8 are supported by substantial evidence. Further, Claimant argues that the Board erred as a matter of law in concluding that Claimant is ineligible for benefits under Section 402(e) of the Law.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

First, we address Claimant's argument that substantial evidence does not exist to support a finding that Claimant violated the cash handling policy. Rather, Claimant contends that she was fired in retaliation for reporting General Manager's behavior to Employer's corporate offices. In an unemployment case, the Board is the final finder of fact and arbiter of credibility. *Johnson v. Unemployment Comp. Bd. of Review*, 744 A.2d 817, 820 (Pa. Cmwlth. 2000). The Board is also empowered to resolve conflicts in evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). Claimant contends that when General Manager discovered that Claimant reported his behavior to corporate, he falsely accused her of violating Employer's cash handling policies. Claimant also contends that General Manager had never worked a night shift to know whether customers were entitled to senior discounts, whereas she knew the customers and whether they were entitled to senior discounts. (*Id.*) She states that in the case of the three customers in their mid-twenties, she "tried to make them happy (as customer is always right)" and did what "seasoned employees" taught her to do. (Claimant's Br. at 7.) Claimant asserts that, as a rule, she did not apply discounts after customers left, but these three customers were ready to pay at the time they brought their dissatisfaction to her attention. She contends that although she asked them to wait until she could apply the discount and reprint the check, one of the customers instructed her to apply the discount and keep the difference so that she could have "a little better tip." (*Id.* at 8.) Claimant states that she tried to explain the situation to General Manager, but he would not let her explain. Instead, he accused her of being a thief and fired her. Claimant argues that she was following Employer's policy of "the customer is always right." (*Id.* at 9.)

9

The Board properly rejected Claimant's argument that General Manager fired her for calling Employer's corporate office about him because Claimant did not testify at the hearing regarding the bases for her call to corporate about him. (C.R., Item No. 12.) Substantial record evidence establishes that Claimant gave senior discounts to customers who were not entitled to such a discount. Specifically, the Board found that General Manager credibly testified that the first customer in the video was forty-two years old and that the group of three customers to whom the Claimant gave a discount were also under the age of fifty-five. (*Id.*) In fact, Claimant does not contend that these customers were fifty-five or more years old. (*Id.*) Thus, substantial evidence exists to support a finding that Claimant violated Employer's cash handling policy.

We next address Claimant's contention that the Board erred in concluding that Claimant's actions rose to the level of willful misconduct.[3] Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests,
> (b) deliberate violation of an employer's rules,
> (c) disregard for standards of behavior which an employer
> can rightfully expect of an employee, or (d) negligence

---

[3] Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).

An employer, seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies, must prove the existence of the rule or policy, and that the claimant violated it. *Walsh*, 943 A.2d at 369. The employer must establish that the employee's actions were intentional or deliberate. *Tongel v. Unemployment Comp. Bd. of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985). "[A]n inadvertent violation of an employer's rule may not constitute willful misconduct." *Eshbach v. Unemployment Comp. Bd. of Review*, 855 A.2d 943, 947 (Pa. Cmwlth. 2004). Once an employer has met its burden, however, the burden then shifts to the claimant to show good cause as justification for the conduct considered willful. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). The employee establishes good cause where his actions are justified or reasonable under the circumstances. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

Here, Employer testified to the existence of a workplace rule providing that the failure to secure company funds and inventory constitutes a violation of the company's cash handling policies. (C.R., Item No. 3, at 14.) The Board found that Claimant violated this policy by giving a senior discount to four customers who were under the age of fifty-five. Based on *Walsh*, the Board properly concluded that Claimant's giving of senior discounts to those under the age of fifty-five constituted willful misconduct.

Because Employer satisfied its burden of proof, the burden shifts to the Claimant to prove that she had good cause for violating Employer's policy. *Walsh*,

11

943 A.2d at 369. Claimant's argument on this issue is somewhat disjointed. Although Claimant argues that she knew her night shift customers and whether they were entitled to senior discounts, she concedes that she gave the discount to three customers under the age of fifty-five. She also explains that she was trained to do so by seasoned employees. Further, Claimant states that, as a rule, she does not apply discounts after customers leave. She states that she only did so when the three customers were paying because the customers did not want to wait for a new check and because one of the customers instructed her to keep the difference as a tip. Claimant maintains that many customers ask her to apply the discounts and direct her to keep the difference as a tip. The Board did not find credible Claimant's statement that all the customers involved instructed her to apply the discount and keep the difference as an additional tip. Moreover, even if the customers had instructed Claimant to do so, she still would have been in violation of Employer's policy because the customers were not entitled to a senior discount. Because Claimant offers no evidence showing she had good cause for violating Employer's policy, the Board did not err in concluding that Claimant engaged in willful misconduct by applying the senior discount to customers under the age of fifty-five.

For the foregoing reasons, we affirm the Board's order.

P. KEVIN BROBSON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Roberta J. Anderson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1056 C.D. 2017 |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 20th day of March, 2018, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge