# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jo Ann Allen, : 
           Petitioner : 
           : 
      v. : No. 672 C.D. 2017
           : Submitted: November 3, 2017
Unemployment Compensation : 
Board of Review, : 
          Respondent : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: May 16, 2018**


Petitioner Jo Ann Allen (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed with modification the Unemployment Compensation Referee's (Referee) decision, denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] based on willful misconduct. For the reasons set forth below, we affirm.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

[2] The Board filed an Application for Relief in the Form of a Motion to Strike Extra-Record Evidence Attached to Claimant's Reply Brief, asking the Court to strike documents attached to Claimant's reply brief that are not part of the certified record and to disregard those documents on

Claimant filed for unemployment compensation benefits subsequent to her discharge from employment with the Lackawanna County Area Agency on Aging (Employer). The Scranton UC Service Center (Service Center) determined that Section 402(e) of the Law did not render Claimant ineligible for unemployment compensation benefits. (Certified Record (C.R.), Item No. 5.) Employer appealed the Service Center's determination, and a Referee conducted a hearing. Employer presented the testimony of its Director, Jason Kavulich (Director), and its Administrative Officer, Karen Schimelfenig (Administrative Officer). Claimant testified on her own behalf and presented the testimony of the Business Agent for the union representing Employer, Michelle Willard (Business Agent).

Director testified that Claimant worked full-time as a Health Care Manager for Employer. (C.R., Item No. 10 at 6.) Claimant began working in March 2006 with her last day being November 18, 2016. (*Id.* at 7.) Director testified that he terminated Claimant's employment because she accessed Employer's SAMS

appeal. "[T]his Court, when reviewing matters in its appellate capacity, is bound by the facts certified in the record on appeal." *Tener v. Unemployment Comp. Bd. of Review*, 568 A.2d 733, 738 (Pa. Cmwlth. 1990). The Court grants the Board's motion and will not consider on appeal the following documents attached to Claimant's reply brief: (1) a document titled "ADA-ACM2, Reasonable Accommodation Plea," dated November 3, 2016; (2) a document titled "Reply to LC-HRD, 11.14.16-Scheduled, ADA-IP Meeting on 11.04.16 RA-Requests," dated November 12, 2016; and (c) a two-page document titled "Contract Agreement By and Between The County of Lackawanna Area Agency on Aging And The Service Employees International Union AFL-CIO, Local 668."

We also note that by order dated August 29, 2017, this Court granted Lackawanna County (Employer) permission to intervene in this matter. On November, 17, 2017, Claimant filed with the Court a Motion to Compel Discovery of Employer's Brief. In so doing, Claimant averred that she had not received a copy of Employer's brief, which Employer filed on September 28, 2017. Claimant asked the Court to require Employer to provide her with a copy of the brief. Claimant also asked the Court to allow her to file a response to Employer's brief. Thereafter, on December 4, 2017, Claimant filed a reply brief to Employer's brief, in which she notes that she received Employer's brief. Accordingly, we deny as moot Claimant's Motion to Compel Discovery of Employer's Brief.

system (SAMS) from an unauthorized computer, falsified documents, and misused county property. (*Id.*) Further, Director testified that Claimant's insubordination also factored into her termination. (*Id.*)

Director explained that SAMS is the state database containing all of Employer's active and inactive cases, and Employer's policy prohibits employees from accessing SAMS on non-Employer-issued computers. (*Id.* at 8.) This policy, Director explained, is a security precaution put in place to protect the state information contained on SAMS. (*Id.*) Director testified that Claimant knew of the policy because it is set forth in an employee handbook given to employees. (*Id.* at 8-9.) He further testified that Claimant allegedly accessed the system on October 2, 2016, a date when Claimant no longer had possession of her Employer-issued computer because of a prior disciplinary action. (*Id.* at 9.) Director also explained that Claimant could not have gained access to an Employer-issued computer on this date because she accessed the system on Sunday and Employer's office is secure on the weekends. (*Id.*)

As to the falsification allegation, Director testified that Claimant documented a journal entry in SAMS, stating that she spoke directly with a consumer. (*Id.* at 10.) Director testified:

> E[mployer's] L[awyer]: Okay. And in the bottom entry, which is September 15, could you review that and explain what that journal entry represents?
>
> [Director]: It states that the Care Manager had contacted the consumer, the father and the (inaudible) the email upon initiation of meals, meal services and her services, which the consumer (inaudible) with the service basically and that there was no more needs at this time. It appears to be a conversation between the two, the father and the worker.
>
> E[mployer's] L[awyer]: And this is the same consumer/father who does not have the physical ability to speak?

3

[Director]: Correct.

(*Id.* at 12.) Director testified that the consumer's daughter later emailed Employer to explain that she was following up from Claimant's voicemail message. (*Id.* at 10.) The consumer's daughter explained that her father was unable to speak because he has no voice box. (*Id.*)

Lastly, Director testified that Employer based the insubordination charge on Claimant's violation of Employer's directive that she was not to access SAMS, files, or privileged information as of July 28, 2016. (*Id.* at 12.)

Administrative Officer testified that Employer restricted Claimant's SAMS access, based on findings of misuse, and issued a written warning. (*Id.* at 15-16.) Employer informed Claimant that it would modify Claimant's SAMS access as needed and directed Claimant to follow all policies and procedures relative to SAMS and confidentiality, including only accessing SAMS on Employer-issued computers. (*Id.* at 16.) Employer based the finding of misuse on a screenshot of employee access to SAMS, showing that Claimant accessed the system at 8:54 a.m. on October 2, 2016. (*Id.*) Administrative Officer testified that this was a date when Claimant's computer was locked in her supervisor's office in Employer's secure building. (*Id.*) Administrative Officer explained that Claimant received the Employee Guide of Policies and Procedures and signed an acknowledgment that she received the policy. (*Id.* at 17.) Administrative Officer also explained that, in January 2015, she sent a letter to all staff, including Claimant, reminding them of the policy. (*Id.*)

As to the charge of misuse of county property, Administrative Officer testified that Employer previously directed Claimant not to access her caseload because of a misuse of confidential consumer information and due to restrictions placed on her job activities by her physician. (*Id.* at 18-19.) Administrative Officer

4

testified that Claimant's physician cited concerns regarding her cognitive ability, including Claimant's ability to concentrate and multi-task, and her critical-thinking skills during exacerbations of anxiety. (*Id.* at 22.) Based upon the outcome of an ADA[3] meeting, which Administrative Officer believed was scheduled for early November 2016, Employer would determine whether to restore Claimant's SAMS access. (*Id.*) Administrative Officer testified, however, that Administrative Officer uncovered a printed document, indicating that Claimant accessed her caseload and printed out personal consumer information before this ADA meeting. (*Id.* at 21.) Further, a screenshot of SAMS showed that Claimant accessed consumer records on three separate occasions before the meeting. (*Id.*) Claimant's assigned duties during this time did not require her to access her case files. (*Id.* at 20-21.)

Claimant testified that she received the directive not to access SAMS, but she accessed the system on October 2, 2016, because the system contained information about her misconduct charges. (*Id.* at 27-28.) Claimant stated that Employer did not give her a "pre-warning" or "warning" about the specific charges outlined in the November 18, 2016 Notice of Determination letter, but instead Employer only gave her a due process hearing. (*Id.*) Claimant recounted the timeline of when she received written warnings and notices, stating that the later documents contained fraudulent accusations. (*Id.* at 28-29.) Claimant stated that the two-month lapse between the first misconduct letter on September 20, 2016, and the Notice of Determination letter on November 18, 2016, indicated Employer's lack of "good cause, necessitous and compelling reason for dismissal." (*Id.* at 29.) She explained that Employer did not uniformly provide a directive to not access the

---

[3] Although Administrative Officer did not specify what she meant by an "ADA meeting," we assume ADA refers to the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, based on testimony regarding Claimant's fitness for duty, leave, and medical restrictions.

5

system and that such a directive was inconsistent with any of Employer's published policies or rules. (*Id.*)

Claimant stated that Employer's allegation about the non-verbal consumer was "just another Lackawanna County misrepresentation and mistake," because Claimant called the daughter to confirm the consumer's satisfaction with the services received. (*Id.* at 30.) She later stated that this consumer uses "buttons on the phone" to respond, which is how she communicated with him. (*Id.* at 33.) Addressing the charge of misuse of county property, Claimant stated that Employer never gave her a disciplinary warning. (*Id.*) Claimant stated that, based on the lapse of time between warnings and being charged, Employer made false accusations, even though she did not damage or improperly use county property. (*Id.*) Claimant testified that Employer's failure to immediately charge her with insubordination demonstrates "a Lackawanna County arbitrary and capricious industrial capital punishment without just cause." (*Id.* at 31.) She stated that Employer never provided her with oral or written warnings of these wrongdoings or of the consequences for repeat infractions, "per Lackawanna County['s] progressive disciplinary policy and procedure." (*Id.*) She also stated that her termination is a "provable pretext for age and disability, harassment, discrimination and a final retaliation for Claimant's having exercised her employee constitutional civil rights." (*Id.*)

Business Agent testified that she is a business agent for the union representing Employer. (*Id.* at 36.) She maintained that the union does not recognize the SAMS access policy, because it was not negotiated properly pursuant to Act 195[4] or the pertinent collective bargaining agreement. (*Id.*) Business Agent stated that

---

[4] Business Agent refers to "Act 195," which appears to be a reference to the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-.2301.

6

even though the union does not recognize the policy as official, she had personal knowledge of employees accessing SAMS from non-Employer computers without their employment being terminated. (*Id.* at 37.) She stated, however, that both Director and Administrative Officer did not have knowledge of these violations. (*Id.*) Business Agent contested the falsification claims, explaining that families are often unaware of certain facts and sometimes send the wrong information to Employer. (*Id.* at 38.)

On cross-examination, Employer's attorney asked if Business Agent was aware that Employer attempted many times to meet with Claimant and her union representative, but Claimant did not appear for those meetings or for the due process hearing. (*Id.* at 40.) Business Agent responded that, at the request of Business Agent and Claimant, Employer provided Claimant with written questions to answer instead of appearing at the due process hearing. (*Id.*) Business Agent further explained that she and Claimant did not attend the due process hearing because Claimant believed that the Deputy Human Resources Director was biased against her. (*Id.*) Business Agent testified that the questions posed by Employer were very specific and that "[t]here is no way that [Claimant] could have answered specific questions without having access to the files. So she would have had to leave the questions blank that the [Employer] was asking her if she could not get into these files." (*Id.* at 37).

Following the hearing, the Referee issued a decision, denying unemployment compensation benefits pursuant to Section 402(e) of the Law. The Referee made the following relevant findings:

1. The claimant last worked as a full-time adult case manager for [Employer] from March 29, 2006, with the last day worked of November 18, 2016.

2. The employer maintains a policy limiting the way an employee is to access the employer's SAMS system;

7

the employee is only allowed to use an employer-issued computer to access the system for security reasons.

3. The claimant knew or should have known the employer policy as the employer provided claimant with a copy of the policy along with any updates.

4. On July 28, 2016, the employer issued an email directive to the claimant providing, in part, that the claimant is not to access her case files unless directed to do so by a supervisor.

5. On Sunday, October 2, 2016, the claimant accessed the SAMS system from a non-employer-issued computer, accessing one of her case files.

6. On November 18, 2016, the employer discharged the claimant for multiple reasons, including violation of the employer policy regarding the access of the SAMS system by a non-employer[-]issued computer and not following the directive of not accessing her case files.

(C.R., Item No. 11.)

The Referee resolved any conflicts in testimony in Employer's favor. (*Id.*) The Referee found that Employer presented competent evidence and credible testimony that Employer discharged Claimant because she violated Employer's policy and a directive regarding accessing SAMS. (*Id.*) The Referee found that Claimant was aware of the policy and directive. (*Id.*) The Referee stated he did not find credible Claimant's assertions that she was required to access SAMS on October 2, 2016, to gain information about Employer's misconduct charges. (*Id.*) The Referee, therefore, concluded that Claimant's actions rose to the level of willful misconduct and denied her benefits. (*Id.*)

8

Claimant appealed the Referee's decision to the Board, and the Board affirmed the Referee's decision, with modification. (C.R., Item No. 18.) The Board explained:

> The [Board], after considering the entire record in this matter, concludes that the determination made by the Referee is proper under the . . . Law.[5] The Board amends Referee's Finding of Fact No. 1 to reflect that the claimant worked as a health care manager. Moreover, the fourth sentence of the last paragraph of the Referee's reasoning should read "The claimant testified that she accessed the SAMS system on October 2, 2016, to gather information so that she could respond to charges placed upon her by the employer on September 21, 2016." The claimant also testified that her supervisor directed her to access her case files and perform work related to those case files. The Board finds that the claimant's testimony is not credible. Otherwise, the Board adopts and incorporates the Referee's findings and conclusions. The Board notes that the claimant was afforded a full and fair hearing.

(*Id.*) Claimant petitioned this Court for review, and Employer filed an application for intervention, which the Court granted.

On appeal,[6] Claimant argues that substantial evidence does not exist to support a finding that she violated Employer's policy. She maintains that Employer made deliberately false statements and misrepresentations to the Board in order to prevent her from receiving unemployment compensation benefits. Claimant also asserts that she was denied a full, fair, and impartial hearing because the Referee was an openly-interested party. Lastly, Claimant argues that the Board erred as a matter

---

[5] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

[6] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

9

of law in concluding that she was ineligible for benefits under Section 402(e) of the Law, contending instead that Employer engaged in employment discrimination.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

First, we address Claimant's argument that substantial evidence does not exist to support a finding that Claimant violated the SAMS access policy. Claimant challenges the finding that on October 2, 2016, she accessed SAMS from a non-Employer computer to access one of her case files. Claimant argues that she did not violate the SAMS access policy because, according to Claimant, Employer defines "access" as "to perform work." (C.R., Item No. 16 at 3-4.) Claimant contends that, although she "accessed" SAMS in order to gather information about Employer's misconduct charges, she did not "access" SAMS to perform work. Thus, Claimant contends that her actions did not constitute "accessing" SAMS as prohibited by Employer's policy or directive, because she did not "access" SAMS to perform work. At the hearing, Employer's Director testified to Employer's policy

10

prohibiting employees from utilizing SAMS on anything but Employer-issued computers. (*Id.* at 8.) Director stated that this precaution is a matter of security put in place to protect the state information contained on SAMS. (*Id.*)

In an unemployment case, the Board is the final finder of fact and arbiter of credibility. *Johnson v. Unemployment Comp. Bd. of Review*, 744 A.2d 817, 820 (Pa. Cmwlth. 2000). The Board is also empowered to resolve conflicts in evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). Although Claimant argues that Employer made a "deliberate misstatement and misrepresentation" regarding the word "access," the Board, through its adoption of the Referee's decision, did not find Claimant's testimony credible in this regard. (*Id.* at 3.) Rather, the Board credited Employer's testimony, which included Director's testimony that (1) the policy prohibited employees from accessing SAMS from a non-Employer-issued computer, (2) Employer directed Claimant not to utilize SAMS for any reason, and (3) Claimant accessed SAMS from a non-Employer-issued computer after Employer directed her not to access SAMS. Thus, substantial evidence exists to support the Board's findings that Claimant violated the SAMS access policy and Employer's directive. To the extent that Claimant takes issue with the evidence on which the Board relied, the Board may either accept or reject a witness's testimony, whether or not it is corroborated by other evidence of record. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). Here, the Board found Claimant's testimony not credible, and it is within the Board's purview to do so.

We next address Claimant's assertion that she was denied a full, fair, and impartial hearing because the Referee was an openly-interested party. Claimant argues that the Referee was an openly-interested party because he disclosed that he

11

knew Business Agent (who was appearing on behalf of Claimant), but he only asked Employer's Lawyer whether he had a problem with those circumstances. Claimant takes issue with the fact that the Referee did not ask her whether she felt Business Agent was improper as a witness or whether the Referee should be disqualified because of this prior relationship. Claimant also complains that the Referee did not provide the obligated assistance to her and made "no effort to solicit Claimant's views to test the credibility of the employer's evidence or to question/probe for facts to develop her case/contention, *e.g.*[,] the necessitous reason for her actions." (C.R., Item No. 16 at 9.) Claimant states that the Board should have addressed both of these issues.

Claimant's argument that the Referee was an openly-interested party is without merit. After all parties were duly sworn, the Referee explained as follows:

> R[eferee]: Thank you. Please note for the record that all witnesses have been duly sworn. And prior to the hearing we had a little bit of discussion. [Business Agent] and I know each other many years back. We haven't really communicated in about ten years. And we notified [Employer's Lawyer] of that and he had no problem with that, correct, sir?
>
> E[mployer's] L[awyer]: Correct.

(C.R., Item No. 10 at 3.) Nothing in the Referee's statement on the record suggests that the Referee has any interest in this matter or any type of relationship with Business Agent that would impact his ability to address properly the matter assigned to him. Moreover, although the Referee should have notified both parties of his prior relationship with Business Agent, the Referee placed that information on the record at the start of the hearing. If Claimant objected to the Referee's handling of the matter, Claimant had an opportunity to object at that time and did not do so. Thus,

12

Claimant waived the issue. *See Schneider v. Unemployment Comp. Bd. of Review*, 523 A.2d 1202 (Pa. Cmwlth. 1987).

After reviewing the hearing transcript, this Court also concludes that the Referee adequately advised Claimant of her rights. Claimant is correct that a referee is required to assist "*pro se* claimants in developing the facts necessary for a decision." *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008). The referee, however, "is not required to become and should not assume the role of a claimant's advocate." *McFadden v. Unemployment Comp. Bd. of Review*, 806 A.2d 955, 958 (Pa. Cmwlth. 2002). For these reasons, the Referee did not deny Claimant a full, fair, and impartial hearing in front of the Referee.

Lastly, we address Claimant's contention that the Board erred in concluding that Claimant's actions rose to the level of willful misconduct.[7] Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests,
> (b) deliberate violation of an employer's rules,
> (c) disregard for standards of behavior which an employer can rightfully expect of an employee, or (d) negligence

---

[7] Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

13

> indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).

An employer, seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies, must prove the existence of the rule or policy, and that the claimant violated it. *Walsh*, 943 A.2d at 369. "An employee's refusal . . . to obey the reasonable directive of his employer can also constitute 'willful misconduct.'" *Bailey v. Unemployment Comp. Bd. of Review*, 457 A.2d 147, 149 (Pa. Cmwlth. 1983). The employer must establish that the employee's actions were intentional or deliberate. *Tongel v. Unemployment Comp. Bd. of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985). Once an employer has met its burden, however, the burden then shifts to the claimant to show good cause as justification for the conduct considered willful. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). The employee establishes good cause where his actions are justified or reasonable under the circumstances. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

Here, Director and Administrative Officer both testified to the existence of a workplace policy prohibiting employees from accessing SAMS unless on an Employer-issued computer. (C.R., Item No. 10 at 8-9, 16-17.) Both also testified that Employer issued Claimant a directive that she was not to access SAMS or her case files until Employer lifted the restriction. (*Id.* at 12, 18-19.) Administrative Officer explained that Employer issued the directive due to concerns regarding the misuse of confidential information and Claimant's cognitive ability. (*Id.* at 18-19, 22.) The Board found that Claimant violated this policy and Employer's directive by accessing SAMS on a non-Employer-issued computer.

14

Based on *Walsh* and *Bailey*, the Board properly concluded that Claimant's access of SAMS constituted willful misconduct.

Because Employer satisfied its burden of proof, the burden shifted to Claimant to prove that she had good cause for violating Employer's policy. *Walsh*, 943 A.2d at 369. Claimant argues that she did not violate this policy because "access" is defined as "to perform work," and that when she "accessed" SAMS, it was only to gain information related to Employer's misconduct charges brought against her. As discussed above, the Board did not find credible Claimant's statement that she did not violate Employer's policy or directive when she accessed SAMS on October 2, 2016, to gain information about the misconduct charges. Even if she did not violate the policy on that date, the record reflects that she accessed the system two more times in violation of her supervisor's directive not to access the system. Thus, Claimant failed to prove good cause for violating Employer's policy.

Finally, Claimant argues that Employer discharged her but not others who engaged in the same conduct and that she was similarly situated to those who were not discharged. She essentially argues that Employer's disparate treatment constituted discrimination, and the Board erred because it did not consider her employment discrimination claims. "Disparate treatment is an affirmative defense by which a claimant who has engaged in willful misconduct may still receive benefits . . . ." *Geisinger Health Plan v. Unemployment Comp. Bd. of Review*, 964 A.2d 970, 974 (Pa. Cmwlth. 2009). An employee seeking to prove disparate treatment must make an initial showing that: "(1) the employer discharged claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based upon an improper criterion." *Id.*

15

Here, Claimant alleges that other employees accessed SAMS from non-Employer-issued computers, but Employer did not terminate their employment. At the hearing, Claimant briefly stated that Employer did not uniformly provide directives not to access SAMS. (C.R., Item No. 10 at 29.) Business Agent testified that she had personal knowledge of employees accessing SAMS from non-Employer computers without their employment being terminated. (*Id.* at 37.) Business Agent, however, also testified that Director and Administrative Officer did not know about these violations. (*Id.*) Although Claimant alleged that she was similarly situated to other employees who engaged in similar conduct and who were not discharged, she provided no specific evidence to prove her claim. Further, this Court has stated that "the mere fact that one employee is discharged for willful misconduct and others are not discharged for the same conduct does not establish disparate treatment." *Am. Racing Equip., Inc. v. Unemployment Comp. Bd. of Review*, 601 A.2d 480, 483 (Pa. Cmwlth. 1991). We conclude, therefore, that Claimant did not make the required showing.

Because Claimant offers no evidence showing she had good cause for violating Employer's policy, the Board did not err in concluding that Claimant engaged in willful misconduct by accessing SAMS on a non-Employer-issued computer and violating Employer's directive not to access SAMS.

For the foregoing reasons, we affirm the Board's order.

P. KEVIN BROBSON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jo Ann Allen,                                       :
                          Petitioner                :
                                                    :
            v.                                      :    No. 672 C.D. 2017
                                                    :
Unemployment Compensation                           :
Board of Review,                                    :
                          Respondent                :

## **O R D E R**

AND NOW, this 16th day of May, 2018, the Unemployment Compensation Board of Review's (Board) Application for Relief in the Form of a Motion to Strike Extra-Record Evidence Attached to Claimant's Reply Brief is GRANTED, Petitioner's Motion to Compel Discovery of Lackawanna County's (Employer) Brief is DENIED AS MOOT, and the order of the Board is AFFIRMED.

_____
P. KEVIN BROBSON, Judge